Crucible Steel, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Gladys Marie Morris, Respondents.

Judge ROGERS filed a concurring opinion in which Judge WILLIAMS, JR. joined, which was substantially as follows:

1. Death benefits should be payable under The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, where a compensable occupational disease merely contributes to or by aggravation of preexisting conditions causes death. [422]

Argued December 18, 1981, before Judges ROGERS, BLATT and WILLIAMS, JR., sitting as a panel of three.

*David N. Rutt, Greenlee, Richman, Derrico & Posa,* for petitioner.

*Edwin H. Beachler, McArdle, Caroselli, Spagnolli & Beachler,* for respondent.

OPINION BY JUDGE BLATT, March 24, 1982:

This is an appeal from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's award of occupational disease benefits to Gladys Marie Morris (claimant), the widow of Sargeant York McDowell (decedent).

The decedent received workmen's compensation benefits for a disability resulting from an occupationally related lung disease contracted while in the employ of Crucible Steel, Inc. (employer), from December 2, 1974 up until the time of his death on November 22, 1977. The claimant filed a fatal claim petition and, following hearings, the referee granted benefits. In doing so, he relied upon the testimony of Dr. J. D. Silverman, the claimant's medical witness, that "the most significant cause" of the decedent's death was silicosis with resulting complications of chronic asthmatic bronchitis and pulmonary emphysema, which resulted from the decedent's employment in the pottery and steel industries. Because of the claimant's subsequent

remarriage, the award was limited to 71 weeks. The Board affirmed the referee and this appeal followed.

Where the party with the burden of proof has prevailed below, our scope of review, and that of the Board, when it takes no additional evidence, is limited to determining whether or not there has been an error of law or a violation of constitutional rights and whether or not the referee's findings of fact are supported by substantial evidence. *Custom Concrete Corp. v. Workmen's Compensation Appeal Board,* 52 Pa. Commonwealth Ct. 331, 415 A.2d 989 (1980).

The employer asserts that the Board erred as a matter of law in affirming the referee's finding that silicosis with accompanying pulmonary complications was "the most significant cause" of death. It argues (1) that the characterization of silicosis as "the most significant cause" does not satisfy the requirement of "death resulting from" an occupational disease set forth in Section 301(c)(2) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(2), and (2) that the award of benefits was not supported by substantial evidence in the record.

To prevail in a fatal claim petition which alleges that death resulted from an occupational disease, the claimant must satisfy Section 301(c)(2) of the Act by demonstrating by competent medical evidence that death *resulted from* an occupational disease as opposed to a showing that the disease was merely a contributing factor in causing the decedent's death. *McCloskey v. Workmen's Compensation Appeal Board,* 58 Pa. Commonwealth Ct. 29, 427 A.2d 288 (1981); *Hauck v. Workmen's Compensation Appeal Board,* 47 Pa. Commonwealth Ct. 554, 408 A.2d 585 (1979). The fact that the decedent had been receiving disability benefits up until the time of his death is not of moment here because the mere presence of an occupational

disease does not, per se, satisfy the causation burden that must be met by a claimant who seeks to successfully establish that *death* resulted from an occupational disease. *Elliott v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 70, 425 A.2d 885 (1981); *Manuel v. N. L. Industries,* 50 Pa. Commonwealth Ct. 279, 412 A.2d 912 (1980).

The claimant's medical witness testified that silicosis, with resulting pulmonary complications, was "the most significant cause of his death." The physician, by his use of the superlative degree in distinguishing silicosis from other potential causes of death, indicated that he considered silicosis to be the primary cause of death. The words, "most significant cause" imply direct causality as opposed to pronouncements such as "major contributing factor," *Elliott,* "contributed in a substantial or significant manner," *Refosco v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 74, 425 A.2d 887 (1981), or "contributed to and accelerated," *Manuel,* all of which have been found to be insufficient to meet the direct causality requirement of Section 301(c)(2). We believe that the characterization made by the material witness here, however, did employ language sufficiently strong in import to meet the standard of causation set forth in Section 301(c)(2) of the Act.

The employer's second argument that the findings were not supported by substantial evidence must also fail. The employer contends that the referee disregarded the substantial competent evidence provided by the employer's medical witness and by the hospital records, and relied instead upon the incompetent evidence of the claimant's medical witness. Dr. Silverman's testimony is alleged to be incompetent because some earlier hospital records and test results had not been available to him for consideration when formulating his medical opinion, but he based his testimony

upon his examination of the decedent at an earlier date[1] and upon the hospital records from the decedent's crucial final hospital admittance in November 1977. He did, therefore, review the hospital records relevant to this claim and his failure to review all extant records and test results in arriving at his opinion does not, therefore, render his testimony incompetent but goes only to the weight and credibility to be accorded it, and such determinations are within the province of the referee. *Ricciardi v. Workmen's Compensation Appeal Board*, 34 Pa. Commonwealth Ct. 316, 383 A.2d 571 (1978).

The employer further asserts that the referee failed to give proper consideration to the November 1977 hospital records which indicated that death was due to cardiac failure and to the testimony of both parties' medical witnesses to the same effect. It is the function of the referee to resolve conflicts in medical testimony and in so doing, he may accept or reject the testimony of any witness, including a medical witness, in whole or in part, *Bowes v. Inter-Community Action, Inc.*, 49 Pa. Commonwealth Ct. 612, 411 A.2d 1279 (1980), and neither the Board nor this Court may disturb a referee's resolution of conflicting medical testimony which is supported by substantial competent evidence. *Katz v. Evening Bulletin*, 485 Pa. 536, 403 A.2d 518 (1979). Dr. Silverman testified that upon examining the decedent, he had made a diagnosis of occupationally-related chronic asthmatic bronchitis and pulmonary emphysema resulting from "pneumoconiosis, namely silicosis." Upon cross-examination Dr.

---

[1] Although not raised by the employer, we wish to note in passing that the fact that Dr. Silverman last examined the decedent in 1975 (as was also the case with the employer's medical witness) does not destroy the competency of his testimony inasmuch as he had had the benefit of reviewing the hospital record of the decedent's final hospital stay when formulating his medical opinion, *Hauck*.

Silverman testified that, based upon his examination of the decedent and upon the November 1977 hospital records, it was his opinion that the decedent's pulmonary condition was "the most significant cause" of death. Dr. Silverman did not, as the employer alleges, testify that he considered cardiac failure to be the cause of death, but rather merely stated that the final diagnosis as noted in the hospital records was "congestive heart failure and enlarged heart with underlying chronic lung disease." The proper test for the legal sufficiency of expert medical testimony on the issue of causation is that the expert must testify that in his professional opinion the result in question came from the cause alleged. *Ricciardi.* Dr. Silverman's testimony, upon which the referee relied, that in his opinion occupationally-related silicosis was "the most significant cause" of the decedent's death, was, therefore, sufficient to meet the standard of proof required under the Act.

We will affirm the order of the Board.

ORDER

AND Now, this 24th day of March, 1982, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed;

AND IT IS FURTHER ORDERED THAT judgment be entered in favor of the claimant, Gladys Marie Morris, and against Crucible Steel, Inc., self-insured, at the rate of $106.00 per week beginning on November 22, 1977 and continuing through April 2, 1979, inclusive, a period of 71 weeks in the total amount of $7,526.00 with interest at the rate of ten percentum per annum.

All payment of compensation shall cease on April 3, 1979, the date of the claimant's remarriage.

Crucible Steel, Inc., self-insured, is directed to reimburse the claimant for funeral expenses in the amount of $750.00.

Crucible Steel, Inc., self-insured, is further directed to reimburse the claimant's counsel for the following reasonable costs incurred:

Dr. J. D. Silverman report, appearance
and testimony ............................................ $225.00

Susan C. Thoma, Reporter

Dr. Silverman's deposition .......................... 89.00

Jean Likar, Reporter

Dr. Shively's deposition ............................. 18.05

East Liverpool City Hospital
hospital records ......................................... 27.00

Attorney fees, as agreed upon between the claimant and her counsel, in the amount of $1,505.20 are approved and Crucible Steel, Inc., self-insured, is directed to deduct said amount, plus the $50.00 costs for a report from Dr. R. W. Beatty which was not entered into the record, from the deferred compensation due the claimant and forward it directly to the claimant's attorneys of record.

All payments of interest and the remaining compensation in the total amount of $5,970.80 shall be paid directly to the claimant and forwarded to her by first class mail.

Judge PALLADINO did not participate in the decision in this case.

————

CONCURRING OPINION BY JUDGE ROGERS:

I concur in the result. The writer was not a member of the panels which decided *Elliott v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 70, 425 A.2d 885 (1981), *Refosco v. Workmen's*

*Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 74, 425 A.2d 887 (1981); *Vargo v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 77, 425 A.2d 888 (1981) holding that Section 301(c)(2) of the Workmen's Compensation Act must be interpreted as allowing benefits for death resulting from occupational disease only where the disease "in and of itself" could have resulted in the death and that death to which occupational disease is only a contributing cause or death as the result of the aggravation of a preexisting condition by occupational disease are not compensable. Being a member of this panel provides the occasion for the writer to note his disagreement with the holdings just described and for expressing the opinion that Section 301(c)(2), being identical in wording to Section 301(c)(1),[1] should be identically interpreted, that is, as providing compensation where occupational disease has contributed to or, by aggravation of the preexisting conditions, caused disability or death. We also note that the holding in this case is a departure from the rule of the cases cited because the phrase "the most significant cause" clearly implies the presence of other causes and therefore the decedent's silicosis was simply a "contributing" cause of his death.

Judge WILLIAMS, JR., joins.

---

[1] Section 301(c)(1) says that death "resulting from injury," is compensable and has been consistently construed to include cases where the injury contributed to death or was the cause of death through aggravation of a preexisting condition; Section 301(c)(2) says that compensation shall be granted for death "resulting from" occupational disease.