484 A.2d 374

**Minnie KUSENKO, Widow of Mike Kusenko, Appellee,**

v.

**REPUBLIC STEEL CORPORATION, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 12, 1984.

Decided Nov. 20, 1984.

Reargument Denied March 8, 1985.

Scott E. Becker, Pittsburgh, for appellant.

Stephen I. Richman, William F. Henkel, Stephen I. Richman & Partners, Washington, for amici curiae Bethlehem Mines Corp.; Bethlehem Steel Corp.; Westmoreland Cas. Co.; McGraw-Edison Co.; Pennsylvania Aggregate & Concrete Ass'n; Emway Resources, Inc., Amoco Oil Co.; and Cooper Energy Services.

Lawrence R. Chaban, Washington, for appellee.

Before NIX, C.J., LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

At issue in this appeal is the standard of causation which triggers the recovery of benefits under Section 301(c)(2) of the Workmen's Compensation Act.[1] The facts are set forth below.

This case arose as a result of a fatal claim petition by Minnie Kusenko (appellee) after the death of her husband Mike Kusenko (decedent). Decedent had worked in the coal mining industry for thirty-six years in the employ of Republic Steel Corporation (appellant). After receiving evidence from both sides, the referee found that decedent died as a result of anthracosilicosis and/or coal miner's pneumoconiosis due to exposure to coal dust while working in the mines. The immediate cause of death stated on the death certificate however, was carcinoma of the lung. Coal worker's pneumoconiosis was listed as "other significant causes."

---

1. Act of June 2, 1915, P.L. 736, art. III, § 301(c), as amended, Act of December 5, 1974, P.L. 782, No. 263, § 4, 77 P.S. § 411.

The referee's award was affirmed by the Pennsylvania Workmen's Compensation Appeal Board (Board). The Board based their decision on *Crucible Steel Inc. v. Workmen's Compensation Appeal Board*, 65 Pa.Cmwlth. 415, 442 A.2d 1199 (1982) stating that the decedent's pneumoconiosis, which was a major reason for his ultimate death, was sufficient to meet the standard of causation for fatal claim benefits. The Commonwealth Court affirmed, applying the standard it set forth in *Evon v. Workmen's Compensation Appeal Board*, 70 Pa.Cmwlth. 325, 453 A.2d 55 (1982). In order to recover benefits under the *Evon* standard, all that is required is a "causal relationship" between the disease and the death or disability. In applying this standard, the Commonwealth Court chose to ignore the standard set forth by a plurality of this Court in *McCloskey v. Workmen's Compensation Appeal Board*, 501 Pa. 93, 460 A.2d 237 (1983) which would require that the occupational disease be a "substantial, contributing factor among the secondary causes bringing about death." *Id.*, 501 Pa. at 101, 460 A.2d at 241. Appellant herein petitioned this Court for appeal and we granted allocatur. After consideration, we reverse and remand to the Commonwealth Court for a decision consistent with this opinion.

The primary import of this case is to set forth a definitive standard for the determination of benefits under the Workmen's Compensation Act for deaths related to occupational hazards. Specifically, when a non-compensable disease of life which is unrelated to work intervenes and death results, what role must the occupational disease play so that benefits are forthcoming?

Resolution of this issue necessarily requires an examination of the statutory language which governs the recovery of benefits in a Workmen's Compensation case.

Pursuant to § 301(c)(2) of the Act:

The terms "injury", "personal injury", and "injury arising in the course of his employment", as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this

act: Provided, that whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease: And provided further, that if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable. The provisions of this paragraph (2) shall apply only with respect to the disability or death of an employe which results in whole or in part from the employe's exposure to the hazards of occupational disease...

77 P.S. § 411(2).

In *McCloskey, supra,* we focused on the statutory language which provided that this section shall apply to death which results "in whole or in part from the employee's exposure to the hazard of occupational disease" *Id.,* 501 Pa. at 100, 460 A.2d at 240; and we rejected the standard of *Consolidation Coal Co. v. Workmen's Compensation Appeal Board,* 37 Pa.Cmwlth. 412, 391 A.2d 14 (1978) i.e. that 301(c)(2) requires that death be "immediately caused" by the occupational disease. We also implicitly rejected the rather liberal standard of *Evon, supra.* which was relied upon in this case by the Commonwealth Court.

The test announced in *McCloskey, supra,* which we reaffirm today, provides that:

Where there are multiple causes of death and the immediate cause was non-compensable, the requirements of § 301(c)(2) may be met by a showing with unequivocal medical evidence that the deceased suffered from an occupational disease and that it was a substantial, contributing factor among the secondary causes in bringing about death.

501 Pa. 93, 101, 460 A.2d 237, 241.

We are convinced that this standard accurately reflects the intent of the legislature, and balances the competing

interests of the parties.[2] To hold that the occupational disease be the sole or direct cause of the disability or death e.g. *Consolidation Coal, supra.* is entirely too strict a standard for a claimant to meet, the result being compensation in only the fewest number of cases. On the other hand to say that any contributing cause is sufficient no matter how slight is compensable e.g. *Evon, supra.* is too heavy a burden to place on industry. Such a standard would effectively reduce the Workmen's Compensation Act to a general health and insurance plan. This limitless liability is clearly not what the framers of § 302(a)(2) had in mind.

We therefore hold that the *McCloskey* standard shall be applied in those cases involving death benefits under 301(c)(2) of the Workmen's Compensation Act. 77 P.S. § 411(2).[3]

In light of our disposition, we reverse and remand to the Commonwealth Court for a decision consistent with this opinion.

LARSEN, J., filed a dissenting opinion.

FLAHERTY, J., filed a dissenting opinion.

HUTCHINSON, J., filed a dissenting opinion.

2. We note that in recent years, standards of causation similar to the one set forth in *McCloskey* have been adopted by a number of states coping with the problems related to occupational disease and death. For example, the Nebraska Supreme Court has held that in order to receive benefits the occupational disease must be a substantial contributing factor to disability *Mann v. City of Omaha,* 211 Neb. 583, 319 N.W.2d 454 (1982). The West Virginia Supreme Court requires that a claimant establish that the occupational disease be a major contributing factor. *Elsie Troxell, Widow of Lewis Troxell v. State Workmen's Compensation Commissioner and Consolidation Coal,* (per curiam opinion filed December 14, 1983, No. 15951). In 1983 the Supreme Court of North Carolina in a case involving disability as a result of cotton dust exposure held that in order for disability arising from an occupational disease to be compensable there must be a showing that the occupational disease *contributed significantly* to that disability. *Rutledge v. Tultex Corp./Kings Yarn,* 308 N.C. 85, 301 S.E.2d 359 (1983).

3. Although Mr. Justice Hutchinson does not join this opinion, we note that he expressly agrees with the standard of causation articulated. *See* Dissenting Opinion, Hutchinson, J.

LARSEN, Justice, dissenting opinion.

I dissent. The paramount responsibility of this Court, in cases arising under the Workmen's Compensation Act, is to liberally construe and apply its provisions in order to effectuate and implement its remedial nature and humanitarian objectives. *Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 120, 439 A.2d 627 (1981); Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1928(c) (pamphlet 1984–85). I believe that the majority's construction and application of section 301(c)(2) of the Act ignores these remedial and humanitarian objectives and, in so doing, exaggerates the interests of the employer at the expense of the worker.

The majority initially rejects the Commonwealth Court's interpretations of section 301(c)(2), 77 P.S. § 411(2), in *Consolidation Coal Co. v. Workmen's Compensation Appeal Board (WCAB)*, 37 Pa.Commw. 412, 391 A.2d 14 (1978) as "too strict", and in *Evon v. WCAB*, 70 Pa.Commw. 325, 453 A.2d 55 (1982) as too liberal". In order "to set forth a definitive standard for the determination" of death benefits under section 301(c)(2) of the Act, and to "balance the competing interests" of workers and employers, slip opinion at 2 and 4, the majority adopts the standard of causation announced in Mr. Justice McDermott's opinion (joined only by then—Mr. Justice, now Mr. Chief Justice Nix) in *McCloskey v. WCAB*, 501 Pa. 93, 101, 460 A.2d 237, 241 (1983), namely:

> Where there are multiple causes of death and the immediate cause was non-compensable, the requirements of § 301(c)(2) may be met by a showing with unequivocal medical evidence that the deceased suffered from an occupational disease and that it was a substantial, contributing factor among the secondary causes in bringing about death.

At ___.

*In the abstract,* I might accept this standard of causation under section 301(c)(2) as a straightforward and reasonably fair accomodation of the conflicting interests of worker and employer. We do not deal in the abstract, however, but in

the world of real people and real situations.  *In applying* the above standard to deny benefits to claimants such as Mr. McCloskey's widow, I submit that the majority has added a *hidden element* to its standard that eliminates from coverage a significant class of deserving claimants. In *practical application,* the standard of causation adopted by the majority today is neither as "definitive" as intended nor as fair an accomodation of conflicting interests as it purports to be; it is, rather, a standard unacceptably close to the "too strict" *Consolidation Coal* standard which the majority purports to reject.

My point of departure with the majority lies with the meaning given the word "substantial", a meaning which can be garnered only by observing the application of the "substantial, contributing factor" standard to particular circumstances.  In application, the majority denies coverage to a claimant whose decedent has contracted an occupational disease that has "merely" accelerated or aggravated a non-compensable disease which is the immediate cause of death.  Observing the operation of the majority's standard in *McCloskey v. WCAB, supra,* we glean the hidden meaning of "substantial"—to be considered a "substantial, contributing factor", the medical testimony must establish that, *but for* the occupational disease, death would not have occurred.  Thus the majority requires a degree of exactitude that, as the legislature recognizes, medical science is presently incapable of supplying.  To demonstrate this point, I shall quote from my dissenting opinion in *McCloskey v. WCAB, supra* at 501 Pa. 105–117, 460 A.2d 237 (footnotes omitted).

"Under the Act, compensation is available for claimants or their dependents for personal injury to the employee or for death by an injury in the course of employment.  77 P.S. § 431.  Section 301(c)(1), 77 P.S. § 411(1) provides, in relevant portion:

"The terms 'injury' and 'personal injury', as used in this act, shall be construed to mean an injury to an employe, *regardless of his previous physical condition,* arising in

the course of his employment and related thereto, and such disease or infection as naturally results from the injury *or is aggravated, reactivated or accelerated by the injury;* and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury. (emphasis added).

"In 1972, section 301(c)(2) was added, 77 P.S. § 411(2), which provision embraced occupational diseases within the 'injury' concept. That section provides, in relevant portion:

"The terms 'injury,' 'personal injury,' and 'injury arising in the course of his employment,' as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act. Provided, That *whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease* and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable. The provisions of this paragraph (2) shall apply only with respect to the disability or death of an employe *which results in whole or in part from the employe's exposure to the hazard of occupational disease* after June 30, 1973 in employment covered by the Pennsylvania Workmen's Compensation Act. (emphasis added).

". . . This Court has held that an injury need not be the sole or exclusive cause of the disability, *Halaski v. Hilton Hotel,* 487 Pa. 313, 319, 409 A.2d 367 (1979), nor, as the majority acknowledges, does an injury or occupational disease need to be the sole or exclusive cause of death. *E.g., Elliott v. WCAB,* 57 Pa.Commw. 70, 425 A.2d 885, 887 (1981). Moreover, it is sufficient under the Act if the injury

(including an occupational disease) 'aggravates, reactivates or accelerates' a preexisting condition which preexisting condition was the immediate or primary cause of disability or death. *See* 77 P.S. § 411(1), *WCAB v. Bernard S. Pincus Co.*, 479 Pa. 286, 388 A.2d 659 (1978) *and Halaski v. Hilton Hotel, supra* at 487 Pa. 318–19, 409 A.2d 367 ('it is sufficient if the injury materially contributed to the disability, rather than the disability resulting from the natural progression of the preexisting condition.')

"Of particular importance to our determination is the principle enunciated by this Court in *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978) and consistently followed in medical malpractice cases. *See Jones v. Montefiore Hospital*, 494 Pa. 410, 431 A.2d 920 (1981) *and Gradel v. Inouye*, 491 Pa. 534, 421 A.2d 674 (1980).

"... Defendants [in *Hamil v. Bashline*] argued their negligence did not *cause* the myocardial infarction even though it *may* have increased the risk of harm to the decedent. Relying on section 323(a) of the Restatement (Second) of Torts, Negligent Performance of Undertaking to Render Services, this Court rejected defendants' narrow theory of causation, and at 481 Pa. 269, 273, 392 A.2d 1280, held:

"We agree with the view of the Superior Court majority expressed in *Bashline I* that the effect of § 323(a) is to relax the degree of certitude normally required of plaintiff's evidence in order to make a case for the jury as to whether a defendant may be held liable for the plaintiff's injuries: Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm.

\*　　\*　　\*　　\*　　\*　　\*

"In light of our interpretation of Section 323(a), it follows that where medical causation is a factor in a case coming within that Section, it is not necessary that the

plaintiff introduce medical evidence—in addition to that already adduced to prove defendant's conduct increased the risk of harm—to establish that the negligence asserted resulted in plaintiff's injury. Rather, once the jury is apprised of the likelihood that defendant's conduct resulted in plaintiff's harm, that Section leaves to the jury, and not the medical expert, the task of balancing probabilities. In so saying we do not intend to undermine the well-established standard of 'reasonable degree of medical certainty' as the accepted norm for medical opinions on causation. But we think it would be unreasonable and unrealistic in this type of case to expect a physician to state with a 'reasonable degree of medical certainty' what *might* have happened when the law (Section 323(a)) recognizes the contingencies involved. See generally D. Danner and E. Segall, Mediocolegal Causation: A Source of Professional Misunderstanding, 3 Am.J.L. & Med. 303 (1978). Where there is at issue the adequacy of medical services rendered in a fact situation to which Section 323(a) applies, therefore, a *prima facie* case of liability is established where expert medical testimony is presented to the effect that defendant's conduct did, with a reasonable degree of medical certainty increase the risk that the harm sustained by plaintiff would occur.

"This Court further held, in *Jones v. Montefiore Hospital, supra* at 494 Pa. 416, 431 A.2d 920:

"Proximate cause is a term of art, and may be established by evidence that a defendant's negligent act or failure to act was a *substantial factor* in bringing about the harm inflicted upon a plaintiff. Pennsylvania law has long recognized that this *substantial factor* need not be, as the trial court incorrectly charged, the only factor, *i.e.,* '*that cause* which ... produces the result.' (citations omitted) A plaintiff need not exclude every possible explanation, and 'the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve defendant from liability unless he can show that such other cause would have produced the

injury independently of his negligence.' *Majors v. Brodhead Hotel,* 416 Pa. 265 at 273, 205 A.2d 873 at 878 (1965).

"It is inconceivable to me that this Court would adopt a stricter standard of causation in workmen's compensation cases than in medical malpractice cases decided under Section 323(a) of the Restatement. That section recognizes a higher duty on the part of one undertaking to render services which justifies a relaxation of the ordinary negligence standards of causation. Surely the statutory and moral obligation of an employer to his employees to provide safe conditions and working environment justifies no more stringent a standard under the Workmen's Compensation Act, especially in light of the liberal construction which we must give the Act.

"The 'resulting from' language of Section 301(c)(2), 77 P.S. § 411(2), surely does not preclude a referee's finding of a causal connection between disability or death and injury (including an occupational disease) where the medical testimony establishes that the disease materially contributed to the death, *Halaski v. Hilton Hotel, supra* at 487 Pa. 317, 409 A.2d 367 and *Crucible Steel v. WCAB,* 52 Pa.Comm. 165, 415 A.2d 458 (1980), or was a substantial factor in increasing ('aggravating, reactivating, or accelerating') the risk of harm to the employee which harm may have been more immediately 'caused' by some other condition or noncompensable occurrence or ailment. *See* Section 301(c)(1) *and Hamil v. Bashline, supra.*

"In Professor Larson's treatise, Workmen's Compensation Law, § 13.11, the author makes the following observations:

"The second group of medical-causation cases comprises the cases in which the existence of the primary compensable injury in some way exacerbates the effects of an independent medical weakness or disease. The causal sequence in these cases may be more indirect or complex, but as long as the causal connection is in fact present the

compensability of the subsequent condition is beyond question.

* * * * * *

"[W]hen the compensable injury produces a condition that interferes with normal curative processes that might have alleviated the preexisting independent condition, the progression of the independent condition is compensable. ....

"It is also worthy of note that federal regulations (20 CFR § 718.205) pertaining to benefits to miners whose death was due to pneumoconiosis provide:

"(b) Death will be considered due to pneumoconiosis if any of the following criteria is met:

"(1) Where competent medical evidence established that the miner's death was due to pneumoconiosis, or

"(2) Where death was due to multiple causes including pneumoconiosis *and it is not medically feasible to distinguish which disease caused death or the extent to which pneumoconiosis contributed to the cause of death* ....

* * * * * *

"(c) For the purpose of this section, death shall be considered to be due to pneumoconiosis *where the cause of death is significantly related to or aggravated by pneumoconiosis.*

"A related consideration in this case is the issue of the sufficiency of the medical testimony regarding causation....

"In the realm of causation, 'sufficient competent evidence', 77 P.S. § 834, means that the expert medical testimony must establish no more—and no less—than that, to a reasonable degree of medical certainty, the death or disability was causally connected to the injury (including an occupational disease). No "magic words" are required so long as the words chosen convey the professional opinion as to causation to that reasonable degree of medical certainty. *Wilkes-Barre v. WCAB,* 54 Pa.Commw. 230, 420 A.2d 795 (1980). And of course, the referee's determination whether

the medical testimony suffices to demonstrate causation is entitled to substantial deference as the Act has vested the referee with broad discretion in assessing the credibility of witnesses and making findings of fact. *Halaski v. Hilton Hotel, supra* 487 Pa. at 319, 409 A.2d 367.

\* \* \* \* \* \*

"I would hold that the expert medical testimony establishes, to a reasonable degree of medical certainty, that Mr. McCloskey's death resulted from his occupational disease (silicosis) in that silicosis increased the risk of harm from the myocardial infarction, thus aggravating or accelerating an independent, preexisting condition. Sufficient competent evidence exists, therefore, to support the referee's finding that silicosis was a 'significant, contributing causative factor in the death' of Mr. McCloskey and to sustain the award of benefits.

"Finally, I believe that the expert medical testimony quoted above also meets the majority's standard of causation, namely, that 'unequivocal medical evidence' establishes that silicosis existed and was a 'substantial, contributing factor' in bringing about death.

As in *McCloskey*, I believe that in the instant case, there was "sufficient, competent evidence" on the record, 77 P.S. § 834, to support the referee's findings that Mr. Kusenko became disabled and died *as a result of* coal miner's pneumoconiosis and that the majority's standard of causation under section 301(c)(2) has been satisfied. Specifically, I would hold that unequivocal medical evidence establishes that an occupational disease, coal worker's pneumoconiosis, existed and that the disease was a "substantial, contributing factor among the secondary causes in bringing about death."

Mr. Kusenko had worked for some 43 years in the coal industry, 36 of those years for Republic Steel. Following hearings, the workmen's compensation referee made the following findings of fact:

SEVENTH: Based upon credible, competent and sufficient medical evidence of record in this case from Dr.

Thomas P. Connelly, your Referee finds as a fact that on June 1, 1977, the deceased became totally and permanently disabled as a result of anthracosilicosis and/or coal workers' pneumoconiosis which resulted from his total and cumulative exposure to coal dust while employed in the coal industry.

EIGHTH: Based on credible, competent and sufficient medical evidence of record in this case from Dr. Thomas P. Connelly, your Referee finds as a fact that the Claimant's husband died as a result of anthracosilicosis and/or coal workers' pneumoconiosis due to the total and cumulative exposure to coal dust throughout his working experience.

These findings by the referee, the "only legitimate fact-finder", *Garcia v. WCAB (Bethlehem Steel Corp.)*, 503 Pa. 342, 344, 469 A.2d 585, 586 (1983), were affirmed by the Board, whose "power ... is preeminent in workmen's compensation proceedings." *McCloskey v. WCAB, supra* at 501 Pa. 97, n. 2, 460 A.2d 237 n. 2. (Opinion of McDermott, J.) Accordingly, a reviewing court cannot disturb those findings unless the record lacks "sufficient, competent evidence" to support them. 77 P.S. § 834.

Dr. Connelly, Mr. Kusenko's treating physician, rendered the following testimony in the instant proceedings:

A. Now, when I saw him in June, his X-rays did show Coal Workers Pneumoconiosis, and when I had him hospitalized, his Pulmonary Function Test was abnormal—and these factors led me to form an opinion in June that he was totally and permanently disabled because of Coal Workers Pneumoconiosis.

\* \* \* \* \* \*

Q. Are you able to state to a degree of medical certainty that any abnormality on these Pulmonary Function Studies was attributable to Coal Workers Pneumoconiosis as opposed to lung cancer?

A. I would feel that they would both—they would both be a factor in causing the abnormalities.

Q. Are you able to say which one was the greater factor?

A. I would think the Coal Workers Pneumoconiosis would be the greater factor.

Reproduced Record at 51a and 53a.

Q. Doctor, do you have an opinion as to what effect Mr. Kusenko's coal workers' pneumoconiosis would have had on his ability to work at the time of his death had he not had bronchogenic carcinoma?

A. Yes, I examined Mr. Kusenko in June of '77, and I felt at that time that he was disabled from coal workers' pneumoconiosis, and I felt his disability was total and permanent at that time. So I would say at the time of his death, had he not had bronchogenic carcinoma, I would have felt that he was totally and permanently disabled due to the coal workers' pneumoconiosis.

Q. Doctor, regardless of whether or not Mr. Kusenko had coal workers' pneumoconiosis, would the bronchogenic carcinoma eventually have proved fatal?

A. In my opinion, it would probably have.

Q. Do you have an opinion as to what effect, if any, Mr. Kusenko's coal workers' pneumoconiosis had when he died?

A. Yes, it would be my opinion that because of the coal workers' pneumoconiosis that he was unable to ward off the bad effects of the bronchogenic carcinoma. In other words, the bronchogenic carcinoma would cause him to gradually deteriorate and lose his appetite, and things like that. And I think that the coal workers' pneumoconiosis would aggravate that— would aggravate that in the progression of the symptoms from the bronchogenic carcinoma.

*    *    *    *    *    *

Q. And you have testified that, in your opinion, Mr. Kusenko did have coal workers' pneumoconiosis?

A. Yes, he did.

Q. What effect would the fact that he had coal workers' pneumoconiosis have on the ability of those portions of the lung, not actually invaded by cancer, to deal with the effects of the cancer?

A. Well, the portions of the lungs that would not be affected by the cancer would also be hampered because of the coal workers' pneumoconiosis; therefore, the breathing ability and respiratory ability of Mr. Kusenko would be hampered by the pneumoconiosis.

\* \* \* \* \* \*

Q. Basically what effect—Do you have an opinion as to what effect the fact that, in your opinion, his remaining lung tissue was not itself healthy have on the rapidity of the course of the terminal events?

A. Yes, I think the fact that he had coal worker's pneumoconiosis would hasten his eventual demise. In other words, because of that, I don't think he would have been able to withstand the effects of the carcinoma. His system was weakened by the pneumoconiosis.

Q. Doctor, in your opinion, which diseases resulted in Mr. Kusenko's death?

A. In my opinion, the direct cause of death was the bronchogenic carcinoma, and I felt that the coal workers' pneumoconiosis was a causative factor in his death.

Reproduced Record at 276a–279a.

Q. Is it possible, Doctor, that Mr. Kusenko may have been unable to ward off the bad effects of this lung cancer absent any coal workers' pneumoconiosis?

A. Yes, it's possible.

Q. And is it possible that he may well have died on December the 6th, 1977, at the same time of day, had he never gone down in the mines at all as a result of his lung cancer?

A. Yes, I would say that's possible.

\* \* \* \* \* \*

Q. Doctor, the crucial word in this instance seems to be the word, may. Doctor, in your opinion, did or didn't coal workers' pneumoconiosis hasten Mr. Kusenko's death?

A. Oh, yes, in my opinion, it did.

Reproduced record at 287A. Additionally, as the majority notes, coal worker's pneumoconiosis was listed on Mr. Kusenko's death certificate as one of the "significant causes" of death.

Based on the foregoing competent record evidence, this Court must accept the findings of the referee and the Board that Mr. Kusenko had contracted coal worker's pneumoconiosis, a compensable occupational disease which resulted in his total disability and eventual death. The evidence adequately supports the finding that Mr. Kusenko's pneumoconiosis was a "substantial, contributing factor among the secondary causes in bringing about death." I see no need, therefore, to "reverse and remand to the Commonwealth Court for a decision consistent with" the majority's standard of causation under section 301(c)(2)—the decision of the Commonwealth Court *is consistent* with that standard. I would affirm the Commonwealth Court.

FLAHERTY, Justice, dissenting opinion.

I must dissent inasmuch as Section 301(c)(2) of the Workmen's Compensation Act clearly requires that death is only compensable when it *results from* an occupational disease. 77 P.S. § 411(2). Thus, I adhere to my original view, as stated in *McCloskey v. Workmen's Comp. Ap. Bd.*, 501 Pa. 93, 102–105, 460 A.2d 237, 241–243 (1983) that compensation must be predicated upon *a* direct causal connection between the occupational disease and the death. The record in the instant case supports the conclusion that the occupational disease, pneumoconiosis, was only *a* contributing factor, not *a* direct cause of death. The direct cause of death was carcinoma, and the testimony is that the pneumoconiosis weakened the decedent and thereby merely hastened his

*death which resulted from the carcinoma.* I would reverse.

HUTCHINSON, Justice, dissenting opinion.

Although the majority correctly articulates the standard for causation, I am constrained to dissent from its mandate remanding the case. I do so because I do not believe the claimant produced sufficient evidence on this record to meet that standard. I would, therefore, simply reverse.