536 A.2d 858

Andrew Musiolowski, deceased, by Rose Musiolowski, Petitioner *v.* Workmen's Compensation Appeal Board (U.S. Steel Corporation), Respondents.

Argued October 5, 1987, before Judges MACPHAIL and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Simon V. John, John* & *John,* for petitioner.

*Robert C. Jones,* with him, *James D. Strader,* for respondent.

OPINION BY SENIOR JUDGE KALISH, January 29, 1988:

Petitioner, Rose Musiolowski, seeks review of a determination by the Workmen's Compensation Appeal Board (Board) denying her widow's claim for benefits upon the death of her husband, Andrew Musiolowski (decedent).

Petitioner's claim is based on the decedent's death resulting from pneumoconiosis sustained during the course and scope of his employment with the respondent U.S. Steel Corporation for thirty-six years.

The Board, holding that the petitioner had not met her burden of proof, reversed the referee's award of compensation. We remand to the Board.

Section 301(c)(2) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(2), provides "that whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply *only to disability or death resulting from such disease. . . ."* (Emphasis added.) Thus, it is the claimant's duty to show that there was a nexus between the occupational disease and death by unequivocal medical testimony.

Appellate review must focus on whether there is rational support in the record, when reviewed as a whole, for the agency action. *Republic Steel Corp. v. Workmen's Compensation Appeal Board,* 492 Pa. 1, 421 A.2d 1060 (1980).

At the hearing before the referee, Dr. Charles Krifcher, a pathologist, testified for the petitioner that when he performed the autopsy he found that "the lungs were studded with numerous scattered nodules, many of which were firm and hard and black"; that the lungs had a sandpaper feel, all of which was "indicative of coal worker's pneumoconiosis." Notes of Testimony (N.T.) at 7. He said, "The main cause of death was extensive acute posterior myocardial infarction." N.T. at 13. He went on to explain what he meant when he said the myocardial infarction was the main cause of death, namely:

> [T]hat coal worker's pneumoconiosis . . . had the effect of decreasing the amount of lung tissue available for exchange of oxygen or oxygenation of the blood; and, . . . [by] decreasing the ability of the blood to be oxygenated. . . . It increased the amount of ischemia. In other words, the blood that would have been able to get through might not have been as completely oxygenated as if this had not occurred.

N.T. at 14. He opined that the extensive coal worker's pneumoconiosis was a contributing cause of death.

On the other hand, Dr. Nathaniel E. Rodman, who examined the slides and autopsy report of Dr. Krifcher and the clinical data of decedent and testified on behalf of the respondent, found a tubercular lesion at least twenty or thirty years old; that the decedent had a history of heart disease; and that the decedent had simple coal worker's pneumoconiosis but that the disease did not cause the heart attack from which decedent died.

The referee elected to believe the opinion of Dr. Krifcher over that of Dr. Rodman and awarded benefits.

The Board, recognizing that while the referee had the right to accept the opinion of Dr. Krifcher, nevertheless held that his testimony did not meet the standard of proof required under *Kusenko v. Republic Steel Corp.*, 506 Pa. 104, 109, 484 A.2d 374, 376 (1984). *Kusenko* held:

> Where there are multiple causes of death and the immediate cause was non-compensable, the requirements of §301(c)(2) may be met by a showing with unequivocal medical evidence that the deceased suffered from an occupational disease and that it was a substantial, contributing factor among the secondary causes in bringing about death.

Thus, the standard under *Kusenko* applied only where there are multiple diseases and the immediate cause of death was due to a *noncompensable* disease; that in order to meet the requirement of section 301(c)(2) of the Act, under such circumstances, it is necessary to show that the *occupational disease* was a substantial factor in bringing about death or disability.

Since it took no additional testimony, the Board is legally bound by the referee's finding that the decedent's death was work related, *provided that such finding is supported by competent evidence. Evans v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.),* 87 Pa. Commonwealth Ct. 436, 487 A.2d 477 (1985); *Universal Cyclops Steel Corp. v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973).

Since the immediate cause of death was a noncompensable disease, in order to meet the standard of proof under *Kusenko,* the claimant had to prove by competent medical testimony that the work-related disease was a *substantial* contributing factor. While

cian did not use the term "substantial" in describing the contributing cause, expert testimony must be reviewed in its entirety to determine whether it meets the test of competency. *Evans.*

By implication, it appears that the Board may have concluded that petitioner did not meet the standard of medical proof required and that *Kusenko* may have been misapplied. There was no specific finding on this critical issue.

Thus, the matter is remanded to the Board for clearer findings on which this court can base its review.

ORDER

Now, January 29, 1988, this matter is remanded to the Workmen's Compensation Appeal Board which is directed to issue a new decision consistent with this opinion and to recertify the record to this court within sixty (60) days.

Jurisdiction is retained.

Judge MACPHAIL concurs in the result only.

---

OPINION BY SENIOR JUDGE KALISH, July 8, 1988:

This matter is before this court after having been remanded to the Workmen's Compensation Appeal Board (Board) for clarification in connection with the standard of proof in the case of *Kusenko v. Republic Steel Corp.,* 506 Pa. 104, 484 A.2d 374 (1984).

Decedent, Andrew Musiolowski, worked for the respondent, U.S. Steel Corporation, for thirty-six years. He died of a heart attack. At the time of his death he suffered from heart disease and pneumoconiosis. His widow's claim is based on work-related pneumoconiosis.

Upon remand, the Board re-adopted its prior opinion and held that, while pneumoconiosis may have contributed to decedent's death, there is no legally sufficient evidence to support a finding that the pneu-

coniosis was a major contributing factor in causing his death and that decedent's doctor's testimony did not contain the requisite standard of proof.

"In cases requiring medical testimony, competent evidence means, that medical testimony which expresses unequivocality." *Evans v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.)*, 87 Pa. Commonwealth Ct. 436, 440, 487 A.2d 477, 479-480 (1985). Equivocal medical evidence is not competent evidence. Upon review, it is our duty to determine whether the medical testimony was unequivocal. In making this determination, expert testimony must be reviewed in its entirety to determine if it expresses the unequivocality required. *Sears, Roebuck & Co. v. Workmen's Compensation Appeal Board,* 48 Pa. Commonwealth Ct. 161, 409 A.2d 486 (1979). In this connection we have held, specifically in heart attack cases, that the mere absence of magic words should not preclude the recovery of benefits where the referee, who personally heard the testimony, determined that the requisite causation was present. *Id.* at 166, 409 A.2d at 488.

At the hearing before the referee, Dr. Charles Krifcher, a pathologist, testified for the decedent's widow that when he performed the autopsy he found that "the lungs were studded with numerous scattered nodules, many of which were firm and hard and black"; that the lungs had a sandpaper feel, all of which was "indicative of coal worker's pneumoconiosis." Notes of Testimony (N.T.) at 7. He said, "[t]he main cause of death was extensive acute posterior myocardial infarction." N.T. at 13. He went on to explain what he meant when he said that the myocardial infarction was the main cause of death, namely:

[T]hat coal worker's pneumoconiosis . . . had the effect of decreasing the amount of lung tissue

available for exchange of oxygen or oxygenation of the blood; and, . . . [by] decreasing the ability of the blood to be oxygenated. . . . It increased the amount of ischemia. In other words, the blood that would have been able to get through might not have been as completely oxygenated as if this had not occurred.

N.T. at 14. He opined that the extensive coal worker's pneumoconiosis was a contributing cause of death.

On the other hand, Dr. Nathaniel E. Rodman, who examined the slides and autopsy report of Dr. Krifcher and the clinical data of decedent, testified on behalf of the respondent. He found a tubercular lesion at least twenty or thirty years old, and that decedent had simple coal workers' pneumoconiosis but that the disease did *not* cause the heart attack from which decedent died. The referee elected to believe the opinion of Dr. Krifcher over that of Dr. Rodman and awarded benefits.

The Board, while recognizing that the referee had the right to accept the opinion of Dr. Krifcher, nevertheless held that his testimony did not meet the standard of proof required under *Kusenko*. The court in *Kusenko* stated:

[w]here there are multiple causes of death and the immediate cause was non-compensable, the requirements of §301(c)(2) may be met by a showing with unequivocal medical evidence that the deceased suffered from an occupational disease and that it was a substantial, contributing factor among the secondary causes in bringing about death.

506 Pa. at 107, 484 A.2d at 376.

We find that Dr. Krifcher's testimony was legally sufficient to meet the requirements of *Kusenko*.

However, having made the legal determination that the testimony was sufficient to go to the fact finder, it

becomes a factual question and should not be taken from the fact finder. *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111 (1977). The reason for this is that the word "substantial" is used to denote the fact that the respondent's conduct had such an effect in producing the harm as to lead a reasonable person to regard it as a cause for which the respondent should be held responsible. In other words, was the respondent's conduct a "substantial factor" or an "insignificant factor" in bringing about the injury. This is a factual question.

The term "substantial factor" is no stranger to the law in Pennsylvania. It is used in the legal sense to create liability in personal injury cases. Restatement (Second) of Torts §431. "The determination of the issue simply involves the making of a judgment [based on the evidence,] as to whether the defendant's conduct, although a cause . . . is so insignificant that no ordinary mind would think of it as a cause for which a defendant should be held responsible." *Ford,* at 594-595, 379 A.2d at 114.

Here, the referee made a determination that the requisite causation was present. This determination was based on substantial evidence.

Accordingly, the order of the Board is reversed.

### ORDER

Now, July 8, 1988, the order of the Workmen's Compensation Appeal Board, Decision No. A-87355, dated April 4, 1986, is reversed.

---

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent.

In *Kusenko v. Republic Steel Corp.,* 506 Pa. 104, 484 A.2d 374 (1984), our Supreme Court indicated that we erred in our opinion in that case,[1] when we applied

---

[1] This Court's opinion in *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Kusenko),* was not reported but it was filed December 7, 1983 to No. 2157 C.D. 1982.

the "causal relationship" standards set forth in *Evon v. Workmen's Compensation Appeal Board (U.S. Steel Corp.)*, 70 Pa. Commonwealth Ct. 325, 453 A.2d 55 (1982), rather than the "substantial, contributing factor" standard for secondary causes of death, first enunciated in *McCloskey v. Workmen's Compensation Appeal Board*, 501 Pa. 93, 460 A.2d 237 (1983).

In emphasizing that the substantial, contributing factor standard was that which should be applied, the Supreme Court said in *Kusenko:*

> To hold that the occupational disease be the sole or direct cause of the disability or death . . . is entirely too strict a standard for a claimant to meet, the result being compensation in only the fewest number of cases. On the other hand to say that any contributing cause is sufficient no matter how slight is compensable . . . is too heavy a burden to place on industry. Such a standard would effectively reduce the Workmen's Compensation Act to a general health and insurance plan. This limitless liability is clearly not what the framers of §302(a)(2) had in mind.

506 Pa. at 108, 484 A.2d at 376-377 (citations omitted).

In the instant case, the majority quotes partially from Dr. Krifcher's testimony. I consider the rest of what that witness said at the same point in his testimony to be dispositive of the issue now before us. The physician testified immediately following the testimony quoted on pages 2 and 3 of the majority's slip opinion as follows:

Q. How did you characterize that in your protocol as to its (coal workers' pneumoconiosis) role in the cause of death?

A. As I said, the main cause of death was arteriosclerotic heart disease with a thrombosis of the coronary artery and extensive myocardial

infarction. *Then it is my opinion that the extensive coal workers' pneumoconiosis did contribute and was a contributory cause.*

(Emphasis added.) Deposition of Dr. Krifcher at page 14.

That testimony is remarkably similar to that which our Supreme Court rejected in *Kusenko*.

A. Yes, it would be my opinion that because of the coal workers' pneumoconiosis that he was unable to ward off the bad effects of the bronchogenic carcinoma. In other words, the bronchogenic carcinoma would cause him to gradually deteriorate and lose his appetite, and things like that. And I think that the coal workers' pneumoconiosis would aggravate that— would aggravate that in the progression of the symptoms from the bronchogenic carcinoma.

A. In my opinion, the direct cause of death was a bronchogenic carcinoma; *and I felt that the coal workers' pneumoconiosis was a causative factor in his death.*

(Emphasis added.) Footnote 8, page 6 of slip op. in *Republic Steel Corp.*

Because Dr. Krifcher here could say no more than that the coal worker's pneumoconiosis was a contributory cause in the decedent's death, I believe the Board was correct in its application of *Kusenko* and I would affirm.