600 A.2d 1305

**RAY OAKS MACHINE SHOP and Rockwood Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (Mary E. BUBENKO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 26, 1991.

Decided Oct. 22, 1991.

Publication Ordered Jan. 3, 1992.

Luann Haley and Daniel D. Harshman, for petitioners.

Raymond J. Zadzilko, for respondent.

Before DOYLE and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Ray Oaks Machine Shop (Employer) appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's award of fatal claim benefits to Mary E. Bubenko (Claimant), the widow of Alex J. Bubenko (Decedent).

Decedent worked as a coal miner for seven and a half years beginning in 1936, where he was exposed to coal dust. Later, Decedent worked as a grinder in several machine shops for twenty-four years, where he was exposed to silica dust. Decedent's last employer was Ray Oaks, where he worked for one and a half years. Decedent's last day of work was July 3, 1980.

During his lifetime, Decedent had filed a claim petition under Section 108 of the Pennsylvania Workmen's Compensation Act (the Act),[1] alleging total disability or, in the alternative, partial disability as a result of coal workers' pneumoconiosis and bronchitis. He began receiving compensation benefits for partial disability from silicosis commencing on August 9, 1983, at the rate of $100.00 per week. Neither Employer nor Decedent appealed the award.

On December 22, 1986 Decedent died of an acute myocardial infarction. On March 7, 1988 Claimant filed a fatal claim petition alleging that her husband's death was second-

1. Act of June 2, 1915, P.L. 736, § 108, *as amended,* 77 P.S. § 27.1.

arily caused by, but not limited to, his work-related inhalation of coal dust, silica dust, grinding wheel dust and fumes. Employer filed a timely answer denying every allegation set forth in the fatal claim petition.

After the matter was heard, the referee, in a decision dated January 12, 1990, made the following relevant finding of fact:

15. After careful review, I find the testimony and opinions of Dr. Sidney A. Goldblatt more persuasive than those expressed by Dr. Harvey Mendelow. *I, therefore, find that mixed dust pneumoconiosis; i.e., coal workers' pneumoconiosis and silicosis, was a co-equal cause of death with the myocardial infarction/coronary artery disease; and therefore, a significant contributing factor.* (Emphasis added).

The referee found that Claimant sustained her burden of proving that her husband's hazardous exposure during the course of his employment with Employer was a significant contributing factor in bringing about Decedent's death and, accordingly, awarded fatal claim benefits. On Employer's appeal, the Board, by decision dated February 26, 1991, found that the referee's decision was supported by substantial evidence and affirmed the fatal claim award. Employer's appeal to this Court followed.[2]

■ Employer contends that it is not liable to compensate Claimant because the referee's finding that "mixed dust pneumoconiosis" was a substantial contributing factor in bringing about Decedent's death is not supported by the record. Where there are multiple causes of death and the immediate cause was non-compensable, the requirements of Section 301(c)(2) of the Act, 77 P.S. § 411(2), may be met by a showing with unequivocal medical evidence that the deceased suffered from an occupational disease and that it

2. Our scope of review is limited to a determination of whether a violation of constitutional rights occurred, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Borough of Media v. Workmen's Compensation Appeal Board (Dorsey)*, 134 Pa.Commonwealth Ct. 573, 577, 580 A.2d 431, 432 (1990).

was a substantial, contributing factor among the secondary causes in bringing about death. *Kusenko v. Republic Steel Corp.*, 506 Pa. 104, 107, 484 A.2d 374, 376 (1984) (quoting *McCloskey v. Workmen's Compensation Appeal Board*, 501 Pa. 93, 101, 460 A.2d 237, 241 (1983)).

■ In reaching her conclusion, the referee considered the testimony of both parties' medical experts. Dr. Goldblatt, Claimant's medical expert, testified that he had reviewed microscopic slides, the protocol of the autopsy performed by Dr. Monteleone, the certificate of death, and various medical reports and records. Based on his review, Dr. Goldblatt was of the professional opinion that Decedent died of co-equal causes of death, namely, a myocardial infarction related to a cardiac condition and severe coal workers' pneumoconiosis of the macular and micronodular type. Dr. Goldblatt also noted that an abundance of birefringent silica crystals were present on autopsy, and testified that silicosis was "strategically important" (R.R. 124a) in bringing about Decedent's death.

Dr. Mendelow, Employer's medical expert, testified that based on his review of various hospital reports, testimony and the autopsy report, he was of the professional opinion that Decedent's death was a direct result of a sudden cardiac arrest due to advanced coronary artery disease. He did not believe that the coronary artery disease was related to Decedent's employment. On cross-examination, Dr. Mendelow opined that Decedent's exposure to mixed dust was not a substantial factor as evidenced by the pathologic findings, but was instead a modest contributing factor. Dr. Mendelow further testified that he found no silicosis and stated that the hypoxia was a direct result of Decedent's coronary disease.

Of the two conflicting medical opinions, the referee found Dr. Goldblatt's opinions to be more persuasive than those expressed by Dr. Mendelow.[3] The referee then concluded

---

[3] The referee may accept or reject the testimony of any lay or medical witness, in whole or in part. *Town & Country Fine Furniture v.*

that "mixed dust pneumoconiosis," which she described as a combination of coal workers' pneumoconiosis and silicosis, was a co-equal cause of death with the myocardial infarction and coronary artery disease and was therefore a significant contributing factor in bringing about Decedent's death.

Our review of the record, however, discloses that neither Dr. Goldblatt nor Dr. Mendelow diagnosed "mixed dust pneumoconiosis" in Decedent. Instead, Dr. Goldblatt diagnosed coal workers' pneumoconiosis from coal mine employment and silicosis from machine shop employment and Dr. Mendelow, while referring to the presence of silica and carbide contained in grinding wheels as "mixed dust," did not believe that the "mixed dust" contributed to death and further testified that Decedent did not have coal workers' pneumoconiosis or silicosis.

In the absence of a diagnosis of "mixed dust pneumoconiosis", the presence of two enumerated occupational diseases [4] cannot create a third disease caused by a mixture of undefined dusts which is compensable under the omnibus provision of Section 108(n) of the Act. *Koppers Co., Inc. v. Workmen's Compensation Appeal Board (Boyle)*, 113 Pa.Commonwealth Ct. 161, 536 A.2d 509, 511 (1988), *overruled on other grounds, Bell v. Workmen's Compensation Appeal Board (Gateway Coal Co.)*, 118 Pa.Commonwealth Ct. 320, 545 A.2d 430 (1988). As Employer points out, the referee cannot combine the medical opinions of Dr. Goldblatt and Dr. Mendelow to find "mixed dust pneumoconiosis" resulting from the presence of coal workers' pneumoconiosis and silicosis where Dr. Goldblatt did not diagnose "mixed dust" and where Dr. Mendelow did not diagnose coal workers' pneumoconiosis or silicosis.[5] Accordingly, we

*Workmen's Compensation Appeal Board (Cooley)*, 115 Pa.Commonwealth Ct. 484, 489, 540 A.2d 638, 640 (1988).

**4.** Coal workers' pneumoconiosis is enumerated in Section 108(q) of the Act, 77 P.S. § 27.1(q), and silicosis is enumerated in Section 108(k) of the Act, 77 P.S. § 27.1(k).

**5.** This Court has rejected a similar illogical conclusion in *USX Corp. v. Workmen's Compensation Appeal Board (Koteles)*, 133 Pa.Common-

find that there is no medical support in the record and no legal basis for the referee to award benefits for "mixed dust pneumoconiosis" under Section 108(n) of the Act.

■ The medical findings accepted by the referee show that the cause of Claimant's occupational disease disability is at least limited to two enumerated diseases—coal workers' pneumoconiosis and silicosis. Because Claimant's exposure while employed by Employer was solely to silica, the question becomes whether there is medical testimony supporting an award for silicosis.[6] *Koppers*, 113 Pa.Commonwealth Ct. at 165, 536 A.2d at 511. Because the referee has not made necessary findings as to whether silicosis was a substantial contributing factor in bringing about Decedent's death, we will remand for a proper determination of this issue. An appropriate order will be entered.

## ORDER

AND NOW, this 22nd day of October, 1991, it is hereby ordered that the above-captioned matter be remanded to the referee for a determination as to whether silicosis and not "mixed dust pneumoconiosis" was a substantial contributing factor in bringing about the death of Alex J. Bubenko.

Jurisdiction relinquished.

DOYLE, Judge, dissenting.

Although Dr. Goldblatt testified that silicosis was "strategically important" (N.T. 18) in bringing about the Dece-

wealth Ct. 419, 576 A.2d 419 (1990). There, we held that once the referee accepted the examining physician's conclusion that a coal miner had black lung disease, the referee could not also accept the employer's expert conclusion that the coal miner was not disabled where the expert's report had been premised on the conclusion that the coal miner had not contracted black lung disease. The referee could not logically accept the medical conclusion of no disability without also accepting the premise that the coal miner did not have the disease. *Id.*, 133 Pa.Commonwealth Ct. at 424, 576 A.2d at 421.

6. Section 302(c)(2) of the Act, 77 P.S. § 411(2), states that as to occupational disease disabilities under Section 108(k) for silicosis, the employer liable for compensation is the one "in whose employment the employe was last exposed for a period of not less than one year to the *hazard of the occupational disease claimed.*" (Emphasis added).

dent's death, that testimony has to be understood in the context of his entire testimony which, in significant part, is as follows:

ON DIRECT EXAMINATION:

Q: What did your microscopic examination reveal?

A: Microscopic examination showed that Alex Bubenko had pneumoconiosis, that the lesions which were macular and in some areas micronodular, were for the most part characteristic of coal worker's pneumoconiosis, and while it is difficult to distinguish between silicosis and coal worker's pneumoconiosis in all situations, the lesions had a far greater resemblance to the expected pattern of coal worker's pneumoconiosis than to the patterns of silicosis.

I examined the tissue also with the polarizing microscope and demonstrated an abundance of birefringent crystals consistent with silica within the lesions, accompanied by a great deal of black pigment, the anthracotic pigment, which is seen so abundantly in coal dust.

(N.T. p. 6)

ON CROSS–EXAMINATION:

Q: You mentioned that he does have evidence of coal worker's pneumoconiosis, which you designated I believe as simple pneumoconiosis?

A: Yes.

Q: And this is related at least from your clinicopathological summary, to his coal mine employment, is that correct?

A: Yes.

Q: And would those be the eight years that he was a coal miner prior to 1945?

A: That's correct.

Q: And is coal worker's pneumoconiosis as you have designated it, the lung problem that you called a co-equal cause of his death, is that correct?

A: That's correct.

Q: *You did not identify silicosis as a co-equal cause?*

A: *I believe that it is present, but I believe it is a much more minor process.*

Q: Would his silicosis, in your opinion, Doctor, be the result of his 24 years as a grinder?

A: Yes, I believe it is.

Q: And in your opinion, Doctor, would the coal worker's pneumoconiosis be the cause of the hypoxemia and the additional load that would be on his heart that you described?

A: Yes. *Primarily it is due to coal worker's pneumoconiosis. I believe there is a contribution as well from silicosis, but I think that overwhelmingly the pathology here is due to coal working.*

Q: *Would that silicosis be minor in the over-all contribution to his lung impairment?*

A: *I believe that it is still strategically important, but considerably more minor than his coal worker's pneumoconiosis.*

Q: And the focal dust emphysema, Doctor, is that also related to the coal worker's pneumoconiosis as compared to the silicosis?

A: Well, it is related to both, but because coal worker's pneumoconiosis is the process which dominates here, I believe that most of the attribution of cause for the focal dust emphysema should be made to coal worker's pneumoconiosis.

Q: And you again identify the coal worker's pneumoconiosis as the most dominant of the lung problems, is that correct?

A: That's correct.

(N.T. pp. 17–18 emphasis added.)

Based on the above testimony from Claimant's medical expert, I would have to conclude that there was no medical evidence to substantiate a finding that the disease of silicosis was a substantial contributing factor in bringing about Decedent's death and a remand in this case would be

inappropriate. I respectfully dissent, therefore, and would reverse the Board.