**Peter Robert SEAMON, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SARNO & SON FORMALS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 19, 1999.
Decided Nov. 9, 2000.

Peter Robert Seaman, petitioner, pro se.

Robert T. Panowicz and Jerome G. Dunham, Wilkes-Barre, for respondent.

Before DOYLE, President Judge, COLINS, Judge, SMITH, Judge PELLEGRINI, Judge, FRIEDMAN, Judge, FLAHERTY, Judge, LEADBETTER, Judge.

LEADBETTER, Judge.[1]

This case raises a question of first impression regarding the utilization review (UR) provisions of the Workers' Compensation Act (Act).[2] On April 30, 1999, this court granted reargument before the court *en banc* to consider whether the failure of a utilization review organization (URO) to obtain medical records from all other treating providers, as required by applicable regulations, renders the UR report inadmissible in subsequent proceedings before a Workers' Compensation Judge (WCJ) to determine the reasonableness and necessity of medical treatment under review.[3]

after the 45–day filing deadline specified in 34 Pa.Code § 131.53(a) rendered that evidence inadmissible.

Originally, claimant appealed *pro se* from two adverse orders of the Workers' Compensation Appeal Board; one order affirmed the denial of claimant's petition to review a utilization review determination and the other affirmed the denial of benefits for hip and ankle injuries. Following appeal to this court (docketed at Nos. 716 and 717 C.D.1998, respectively), the matters were consolidated for our review. In a memorandum opinion dated February 19, 1999, this court remanded for a rehearing on the petition to review the UR

---

1. This case was re-assigned to the authoring Judge on September 12, 2000.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

3. The other arguments made by Peter Robert Seamon (claimant) in this appeal are: (1) that his employer, Sarno & Son Formals (Sarno), waived its right to utilization review of certain medical treatment provided to claimant because its insurance carrier allegedly authorized the treatment; (2) that Sarno's initial request for utilization review was untimely; and (3) that Sarno's submission of evidence

On March 28, 1984, Peter Robert Seamon (claimant) sustained injuries to his neck and back during the course and scope of his employment with Sarno & Son Formals. As required by the Act, claimant's medical expenses were paid and he received partial disability benefits. On July 13, 1989, claimant's partial disability benefits of $14.60 per week were commuted for the remainder of his eligibility.

As a result of his injuries, claimant received chiropractic treatment from Dr. Joseph Gnall until September 1994 when he relocated from Pennsylvania to Tucson, Arizona. Thereafter, beginning September 28, 1994, claimant sought chiropractic treatment in Tucson with Dr. David Welch. On January 6, 1995, Sarno challenged the reasonableness or necessity of Dr. Welch's treatment of claimant by filing a request for utilization review pursuant to Section 306(f.1)(6) of the Act, 77 P.S. § 531(6).[4] The Bureau of Workers' Compensation (Bureau) appointed Medical Planning and Review as the URO, which in turn selected chiropractor Jeff A. Behrend as the reviewing doctor. Dr. Behrend reviewed Dr. Welch's medical file on claimant, which the URO had obtained. In his report to the URO, Dr. Behrend concluded that Dr. Welch's chiropractic treatment of claimant was not reasonable or necessary. Specifically, Dr. Behrend opined as follows:

> The records provided for review. establish an uncomplicated strain/sprain to a 30-year-old male. This would have an expected natural course extending over [8] to [16] weeks. The records indicate that the patient received both medical and chiropractic care during the period between the date of injury and the onset of chiropractic care with Dr. Welch, September 28, 1994. This care is not well defined, but there is evidence that the patient may have received an adequate course of chiropractic care.
>
> Chiropractic care began with Dr. Welch over [10] years after the injury occurred. The patient received protocol of manipulation, traction and massage. This is a passive modality protocol and is usually applied for a period of [8] to [12] weeks.... This would not be an appropriate protocol this long after the injury occurred.
>
> The records provided from Dr. Welch do not provide a clear rationale for continuing chiropractic care at the time treatment was assessed with him, [10] years after the injury occurred. There is no discussion of the patient's previous treatment plan or clinical outcome. Considering the patient's history, this would have been appropriate. The records do not provide an adequate rationale to continue the treatment protocol provided by Dr. Welch....

Medical report of Dr. Behrend, dated March 17, 1995, at 2–3.

On April 8, 1995, claimant filed a timely utilization review reconsideration request with the Bureau.[5] Chiropractor Jess P.

---

determination (No. 716 C.D.1998) and affirmed the denial of benefits for hip and ankle injuries (No. 717 C.D.1998). *Seamon v. Workers' Compensation Appeal Bd. (Sarno & Son Formals)*, Nos. 716 and 717 C.D.1998 (Pa.Cmwlth.1999). Subsequently, on April 30, 1999, we granted Sarno's application for reargument in No. 716 C.D.1998, withdrew our prior decision of February 19 and severed the two appeals. Thereafter, a separate opinion addressing the merits of the appeal docketed at No. 717 C.D.1998 was issued. *See Seamon v. Workers' Compensation Appeal Bd. (Acker Assoc., Inc.)*, No. 717 C.D.1998 (Pa. Cmwlth. filed June 23, 1999).

4. Section 306(f.1)(6) provides, in pertinent part:
   The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to ... utilization review at the request of an employe, employer, or insurer. The department shall authorize utilization review organizations to perform utilization review under this act. Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review.
   77 P.S. § 531(6)(i). Sarno's request sought review of Dr. Welch's treatment beginning September 28, 1994, and thereafter.

5. Sarno filed its petition for utilization review prior to enactment of the Act 57 amendments, which eliminated the reconsideration phase of the utilization review process. Act of June

Armine performed the second review of Dr. Welch's treatment. Dr. Armine also reached the conclusion that the treatment delivered by Dr. Welch was not reasonable or necessary. Specifically, Dr. Armine stated in his report that:

> It is my professional chiropractic opinion that the care rendered this patient from September 28, 1994 onward is not reasonable and necessary for the following reasons.
>
> There is no documentation showing that this patient required/obtained care on a reasonably continuous basis from the accident of 1984 to the present time. According to the initial intake forms the patient indicates that he had care for approximately 3 years post accident but follow-up care after that is vague at best. Further, there is no objective documentation, diagnostic findings, etc. showing that would lead one to conclude that this patient would require ongoing chiropractic care. Therefore, it is my opinion that the care rendered this patient from 9/28/94 onward is not reasonable and necessary.

Medical report of Dr. Armine, dated May 19, 1995, at 2. Dissatisfied with this outcome, claimant filed a timely utilization review petition on July 5, 1995. A *de novo* hearing was conducted before a WCJ, in which Sarno had the burden of proving that the treatment rendered by Dr. Welch was not reasonable and necessary.[6] In support of his petition, claimant offered into evidence the office notes of Drs. Welch and Gnall. Sarno, in turn, offered the UR reports of Drs. Behrend and Armine. Based on his review of the record, the WCJ issued a decision and order finding that Sarno had met its burden of proving that Dr. Welch's treatment was not reasonable or necessary. The Workers' Compensation Appeal Board (Board) affirmed and the present appeal followed.

Claimant asserts that the URO failed to obtain the medical records from his earlier treating doctors, in violation of applicable regulations. He argues that such a failure renders the UR determinations inadmissible, or at least incompetent to support a finding that treatment was not reasonable or necessary, and precludes a "fair and impartial review" by the WCJ of the issue. Even assuming, *arguendo*, the accuracy of claimant's factual representations, which employer challenges, he is not entitled to relief.

Claimant is correct that in addition to obtaining the records of the provider under review, the Bureau's regulations require the URO at least to make reasonable efforts to obtain the available records of all other providers rendering treatment for the work-related injury. Specifically, the regulations provide, in pertinent part:

> **§ 127.407. Extent of review of medical records.**
>
> (a) In order to determine the reasonableness or necessity of the treatment under review, URO's shall obtain for review all available records of all treatment rendered by all providers to the employe for the work-related injury. However, the UR determination shall be limited to the treatment that is subject to review by the request.
>
> . . . .
>
> **§ 127.459. Obtaining medical records—provider under review.**
>
> (a) A URO shall request records from the provider under review in writing. . . . In addition, the URO may request the records from the provider under review by telephone.
>
> (b) The medical records of the provider under review may not be requested from, or supplied by, any source other than the provider under review.
>
> . . . .
>
> **§ 127.460. Obtaining medical records-other treating providers.**

---

24, 1996, P.L. 350, *as amended*, 77 P.S. § 531(6).

**6.** *See generally Lehigh Valley Refrigeration Serv., Inc. v. Workmen's Compensation Appeal Bd. (Nichol)*, 120 Pa.Cmwlth. 434, 548 A.2d 1321, 1323 (1988).

(a) A URO shall request records from other treating providers in writing. In addition, the URO may request records from other treating providers by telephone.

. . . .

(c) If a URO is not able to obtain records directly from the other treating providers, it may obtain these records from the insurer, employer or the employe.

. . . .

§ 127.462. Obtaining medical records-duration of treatment.

UROs shall attempt to obtain records from all providers for the entire course of treatment rendered to the employe for the work-related injury which is the subject of the UR request, regardless of the period of treatment review.

34 Pa.Code §§ 127.407(a), 127.459(a), (b), 127.460(a), (c), and 127.462, respectively.

■■■■ This regulatory scheme clearly contemplates that reviewing doctors assess the reasonableness or necessity of particular treatment in the context of the entire course of care for the work-related injury. A lack of the complete documentary medical history, however, does not automatically preclude a UR doctor from making a determination of reasonableness or necessity; nor does it preclude a WCJ from crediting and relying on the UR report. If a reviewer cannot make a determination due to a lack of medical information, the reviewer is obligated under the regulatory scheme to resolve the issue in favor of the provider and to explain the reason for doing so. *See* 34 Pa.Code § 127.471(b). Here, although both UR doctors noted the absence of information regarding previous treatment, neither doctor indicated that they could not render an opinion due to the lack of medical records from other treating providers. Both doctors opined unequivocally that for the type of injury noted, ongoing chiropractic care was not warranted.

■■■■ Moreover, the Act provides that when a petition for review of a UR determination comes before a WCJ, the WCJ is obligated to consider the report *as evidence*, but is not bound by the report. *See* Section 306(f.1), 77 P.S. § 531(iv). Similarly, the regulations provide that when a petition for review has been filed, the hearing before the WCJ is a *de novo* proceeding where the WCJ is required to consider the report *as evidence* but is not bound by it. *See* 34 Pa.Code § 127.556. The weight and credibility of the UR report, as with any other evidence, is for the fact-finder. Any deficiency or irregularity in the UR process can be argued before and considered by the WCJ in determining the weight and credibility of the UR evidence. We also conclude that the *de novo* nature of the proceedings insures a fair review; either party is free to offer evidence beyond that considered in the UR process in meeting their burden of proof. Here, employer chose to meet its burden by relying on the UR reports. When the burden shifted to claimant, claimant was free to offer other medical evidence, and in fact submitted handwritten office notes of Dr. Gnall, to rebut employer's evidence.

■■■ Accordingly, we conclude that the URO's apparent failure in this case to obtain all the records specified by the regulations neither precluded the WCJ from admitting into evidence and considering the UR report, nor did it deprive claimant of a fair hearing on the issue.

■■■ The other issues raised by claimant do not merit extended discussion. First, claimant argues that Sarno waived its right to utilization review when an agent of its insurance carrier authorized him to begin treating with Dr. Welch. Even had the WCJ established this uncorroborated hearsay conversation as fact, this would be irrelevant. Pursuant to Section 306(f.1)(6), the reasonableness or necessity of treatment may be subject to prospective, concurrent or retrospective utilization review. Since an employer may petition for review of treatment at any time, any alleged authorization to begin treatment would not preclude a subsequent UR review.

■ Claimant next asserts that Sarno failed to comply with the requirements that the UR request be filed within 30 days of receipt of the treatment bill in question as required by 34 Pa.Code § 127.404. However, claimant failed to raise this issue before either the WCJ or the Board, and it is therefore waived.

■ Finally, claimant argues that Sarno failed to comply with 34 Pa.Code. § 131.53(a). Section 131.52(a) of the Code requires the moving party to orally or in writing advise the referee at the first hearing of, *inter alia*, items and information which are intended to be used as evidence or exhibits. Section 131.53(a) provides, in turn, that within 45 days after the first hearing, the respondent shall submit in writing to the WCJ the items and information specified in § 131.52(a). Specifically, claimant contends that Sarno filed its § 131.53(a) information and exhibits 58 days after the first hearing, rather than 45 days. However, as the Board noted, the only evidence Sarno presented regarding its UR petition were the two UR reports, which had already been admitted into evidence at the first hearing.[7] Therefore, the lateness of Sarno's § 131.53(1) submission was clearly harmless.

■ Since the UR reports amply supported the determination that the treatment under review was neither reasonable nor necessary, the order of the Board is affirmed.

Judge Friedman dissents.

### *O R D E R*

AND NOW, this 9th day of November, 2000, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

7. *See* Hearing Transcript, dated September 19, 1995, at 8, 19 and 61. It should also be noted that pursuant to 34 Pa.Code § 127.555(b), when a petition for review of a UR determination is filed, the Bureau is required to forward the UR reports to the WCJ assigned to the case.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

FLAHERTY, Judge, dissenting.

I dissent from the majority opinion in this case which raises a very important question of first impression regarding the utilization review (UR) provisions of the Workers' Compensation Act (Act).[1] The majority holds that the clear, mandatory language of applicable regulations requiring a utilization review organization (URO) to obtain medical records from all treating providers does not render the report of the URO which was based on only some of the records inadmissible or incompetent in subsequent proceedings before a Workers' Compensation Judge (WCJ) to determine the reasonableness and necessity of medical treatment under review even though the URO has never provided any explanation of its attempts, if any, to secure all available records as required by the regulations or to provide a reasonable excuse why the missing records were not obtained.

On March 28, 1984, Peter Robert Seamon (Claimant) sustained work-related injuries to his neck and back. Claimant received partial disability benefits and his medical expenses were paid. On July 13, 1989, Claimant's partial disability benefits of $14.60 per week were commuted for the remainder of his eligibility.

As a result of his injuries, Claimant commenced chiropractic treatment from Dr. Joseph Gnall when he relocated from Pennsylvania to Tucson, Arizona. Thereafter, beginning September 28, 1994, Claimant sought chiropractic treatment in Tucson with Dr. David Welch. On January 6, 1995, Employer challenged the reasonableness or necessity of Dr. Welch's treatment of Claimant by filing a request for utilization review pursuant to Section 306(f.1)(6) of the Act, 77 P.S. § 531(6).[2]

2. Section 306(f.1)(6) provides, in pertinent part:

The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to … utilization review at the request of an employe, employer, or insurer. The department shall authorize utilization review organizations to perform utilization review under this act.

The Bureau of Workers' Compensation (Bureau) appointed Medical Planning and Review as the URO, which in turn selected chiropractor Jeff A. Behrend as the reviewing doctor. Dr. Behrend reviewed Dr. Welch's medical file on Claimant, which the URO had obtained. In his report to the URO, Dr. Behrend concluded that Dr. Welch's chiropractic treatment of Claimant was not reasonable or necessary.

On April 8, 1995, Claimant filed a timely utilization review reconsideration request with the Bureau.[3] Chiropractor Jess P. Armine performed the second review of Dr. Welch's treatment. Dr. Armine also reached the conclusion that the treatment delivered by Dr. Welch was not reasonable or necessary. Dissatisfied with this outcome, Claimant filed a timely utilization review petition on July 5, 1995. A *de novo* hearing was conducted before a WCJ, at which Employer had the burden of proving that the treatment rendered by Dr. Welch was not reasonable and necessary.[4] Employer offered the UR reports of Drs. Behrend and Armine. Claimant offered into evidence the office notes of Drs. Welch and Gnall. Based on his review of the record, the WCJ issued a decision and order finding that Employer had met its burden of proving that Dr. Welch's treatment was not reasonable or necessary. The Workers' Compensation Appeal Board (Board) affirmed and the present appeal followed.

Claimant asserts that the URO failed to obtain the medical records from his earlier treating doctors, in violation of applicable regulations and argues that such a failure renders the URO determinations inadmissible, or at least incompetent to support a finding that treatment was not reasonable

or necessary, and precludes a "fair and impartial review" by the WCJ of the issue.

Claimant is correct that in addition to obtaining the records of the provider under review, the Bureau's regulations require the URO, at the very minimum, to make reasonable efforts to obtain the available records of all other providers rendering treatment for the work-related injury. Specifically, the regulations provide, in pertinent part:

**§ 127.407. Extent of review of medical records.**

(a) In order to determine the reasonableness or necessity of the treatment under review, UROs **shall obtain** for review **all available** records of all treatment rendered by all providers to the employe for the work-related injury. However, the UR determination shall be limited to the treatment that is subject to review by the request. (emphasis added.)

. . . .

**§ 127.459. Obtaining medical records—provider under review.**

(a) A URO **shall** request records from the provider under review in writing. . . . In addition, the URO may request the records from the provider under review by telephone. (emphasis added.)

(b) The medical records of the provider under review may not be requested from, or supplied by, any source other than the provider under review.

. . . .

**§ 127.460. Obtaining medical records—other treating providers.**

Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review.

77 P.S. § 531(6)(i). Employer's request sought review of Dr. Welch's treatment beginning September 28, 1994, and thereafter.

**3.** Employer filed its petition for utilization review prior to enactment of the Act 57

amendments, which eliminated the reconsideration phase of the utilization review process. Act of June 24, 1996, P.L. 350, *as amended,* 77 P.S. § 531(6).

**4.** *See generally Lehigh Valley Refrigeration Serv., Inc. v. Workmen's Compensation Appeal Bd. (Nichol),* 120 Pa.Cmwlth. 434, 548 A.2d 1321, 1323 (1988).

(a) A URO **shall** request records from other treating providers in writing. In addition, the URO may request records from other treating providers by telephone. (emphasis added.)

. . . .

(c) If a URO is not able to obtain records directly from the other treating providers, it may obtain these records from the insurer, employer or the employe.

. . . .

**§ 127.462. Obtaining medical records—duration of treatment.**

UROs **shall attempt** to obtain records **from all providers for the entire course of treatment** rendered to the employe for the work-related injury which is the subject of the UR request, regardless of the period of treatment review. (emphasis added.)

34 Pa.Code §§ 127.407(a), 127.459(a), (b), 127.460(a), (c), and 127.462, respectively.

This regulatory scheme clearly contemplates that reviewing doctors assess the reasonableness or necessity of particular treatment in the context of the entire course of care for the work-related injury. To do so, a patient's medical history is required, and the Bureau expressly states that the records are to be provided by the URO. Specifically, 34 Pa.Code § 127.407 provides that "UROs shall obtain for review all available records of all treatment rendered by all providers . . . ." As recently stated by our Supreme Court, the use of the word "shall" is mandatory. *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 696 A.2d 148 (1997). Thus, given the mandate, it was incumbent upon the URO to obtain Claimant's medical records or to provide a reasonable explanation of the attempts that were made to obtain such records or a reasonable excuse why the records were unavailable. Such explanation should include why it was unable to obtain the records from the insurer, the employer, the employee or the providers as suggested by 34 Pa.Code § 127.460(a) and (c) or, at the very least, under 34 Pa.Code § 127.462, to "attempt to obtain records from *all* providers for the entire course of treatment . . . ."

Here both Dr. Behrend and Dr. Armine stated in their reports that the lack of a complete history of Claimant's treatment factored into their respective conclusions that Dr. Welch's treatment of Claimant was not reasonable or necessary. Specifically, Dr. Behrend stated:

The records provided from Dr. Welch do not provide a clear rationale for continuing chiropractic care at the time treatment was assessed with him, [10] years after the injury occurred. There is no discussion of the patient's previous treatment plan or clinical outcome. Considering the patient's history, this would have been appropriate. The records do not provide an adequate rationale to continue the treatment protocol provided by Dr. Welch. . . .

Medical report of Dr. Behrend, dated March 17, 1995, at 3.

Similarly, the lack of medical records also affected Dr. Armine's opinion:

It is my professional chiropractic opinion that the care rendered this patient from September 28, 1994 onward is not reasonable and necessary for the following reasons.

There is no documentation showing that this patient required/obtained care on a reasonably continuous basis from the accident of 1984 to the present time. According to the initial intake forms the patient indicates that he had care for approximately 3 years post accident but follow-up care after that is vague at best. Further, there is no objective documentation, diagnostic findings, etc. showing that would lead one to conclude that this patient would require ongoing chiropractic care. Therefore, it is my opinion that the care rendered this patient from 9/28/94 onward is not reasonable and necessary.

Medical report of Dr. Armine, dated May 19, 1995, at 2. Dr. Armine specifically noted that there was "no documentation in the

file showing care [to Claimant] prior to September 28, 1994." Medical report of Dr. Armine, dated May 19, 1995, at 2. It was precisely because there was no medical documentation explaining Claimant's history of care that Dr. Armine opined that Claimant's present medical treatment was not reasonable and necessary. The Code places the duty of obtaining all of a claimant's medical records on the URO. 34 Pa.Code §§ 459, 460. Under the facts in the instant case, given that the burden is on Employer to prove that the treatment rendered by Dr. Welch was not reasonable and necessary, and Employer chose to meet its burden solely through the introduction of the URO report, it was the burden of Employer to ensure that the report of the URO was in compliance with all applicable regulations in order for that report to constitute competent evidence. The regulations specifically require a physician to review all medical records of a claimant before offering an opinion.

Here, because the report did not conform to the regulations in that records of Claimant's treatment for the work related injury were not provided to Dr. Behrend and Dr. Armine, the WCJ, although required to accept it as evidence in accordance with 306(f.1)(6)(iv), 77 P.S. § 531(6)(iv) [5] erred in treating it as competent absent an explanation from Employer as to why the mandated medical records were not made available to Dr. Behrend and Dr. Armine. Here, the regulations require that a reviewing doctor have the claimant's medical history. Yet in this case, the records were not provided to the reviewing doctors nor was an excuse proffered by the URO or the Employer as to why such were not made available, and/or that a reasonable attempt was made to procure such records for the reviewers.

We acknowledge that a doctor's failure to review a patient's medical history normally goes to the weight of the doctor's testimony, not to its competency. *Crucible Steel, Inc. v. Workmen's Compensation*

*Appeal Board,* 65 Pa.Cmwlth. 415, 442 A.2d 1199 (1982)(doctor's failure to review all records and test results in arriving at his opinion, does not render testimony incompetent but only goes to the weight and credibility), *overruled on other grounds, Bucyrus–Erie Co. v. Workmen's Compensation Appeal Board,* 73 Pa.Cmwlth. 201, 457 A.2d 1031 (1983). However, this situation is not normal because here, the regulations clearly mandate that a reviewing doctor be provided with the claimant's medical history. As such, failure to provide such a history, absent a reasonable excuse, contravenes the regulations and renders the URO report, based on a procedure that violates the law as expressed in Bureau regulations, incompetent as a matter of law. Bureau regulations have the force of law and should not be casually treated by the Bureau, the Board, the WCJ or this Court. Through its repeated use of the word "shall" the Bureau expressed a clear requirement prescribing mandatory, not discretionary, action by the URO, the insurer, and the employer to obtain such records including obtaining them from the employee, if available there.

More importantly, the authority given the URO is a radical delegation of authority to experts to second guess treating physicians based entirely on a record review without even a physical examination. The report of the URO and the opinions of the reviewing doctors relied on in the URO report are not under oath or subject to cross-examination at the hearing before the WCJ. Strict compliance, therefore, should be required with the Bureau's regulations requiring an "attempt" to obtain the records or, at the least, provide an explanation for not obtaining the records. Otherwise, the party requesting the UR may conveniently decide to withhold or ignore records in its possession, which are not beneficial to its case. This court should not facilitate concealment on these cases which are not subject to standard judicial safeguards.

**5.** Section 306(f.1)(6)(iv) provides that the WCJ "shall consider the utilization review

report as evidence but shall not be bound by the report."

It is not enough to suppose that the Claimant is not hurt by this process since the provider is prohibited from collecting the payment of services from the patient for treatment held unreasonable as a result of the URO report. Such a presumption fails to take into account the consequences such a cursory review will have on physicians formerly willing to treat injured employees because their bills were to some extent protected by a cross-examination procedure which would among other things, compel any physician challenging their treatment to explain why certain records were not obtained and considered in the report.

By ignoring the mandate of the Bureau's regulation, the majority is eliminating the only protection the treating physician had under the UR system, that is, that a reasonable effort to review *all* medical records would be made before someone who has never seen his patient would decide that his treatment was unnecessary. This decision is contrary to the intent of the Workers Compensation Act to liberally construe it for the benefit of injured employees. The ultimate consequence of not requiring the URO to strictly adhere to the Bureau's regulations will be the same result experienced by private health insurance carriers that unreasonably deny participating physicians payment for necessary treatment rendered. Many treating physicians will opt out of accepting patients with work-related injuries unless they are paid in advance directly by the employee who will then be left to seek reimbursement under the workers' compensation system. Since employees generally cannot afford to pay up front, they will be forced to seek treatment from a physician or surgeon who remains in the pool which will be greatly reduced, of lesser quality and cause long waits for needed treatment.

The URO's failure in this case to obtain all the records specified by the regulations or to at least provide a reasonable explanation of the attempts made to obtain them, the reasons for such failure and an adequate excuse for its failure to comply with the regulations, violated 34 Pa.Code §§ 127.407, 459 and 460 and rendered the reports of the URO to be not competent evidence. The WCJ erred in relying on incompetent evidence produced by the Employer who did carry its burden of proof. I do, therefore dissent.

Judge SMITH joins this dissent.