**ENVIRONMENTAL OPTIONS GROUP, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BROWN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 19, 2001.

Decided Dec. 21, 2001.

---

Thy Nguyen, Philadelphia, for petitioner.

Peter J. Classetti, Newtown, for respondent.

Before DOYLE, President Judge, McGINLEY, Judge, and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

Environmental Options Group (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), affirming as modified an order of the Workers' Compensation Judge (WCJ), which granted the claim petition and petition for review of utilization review determination filed on behalf of Edward Brown (Claimant) and denied and dismissed Employer's modification/suspension/termination petition.[1] We now affirm.

Employer performs abatement work of asbestos, lead and other hazardous wastes. In April of 1997, Employer was looking for a supervisor to oversee the removal of roof asbestos, floor tile and mastic from a post office in Bellmaur, New Jersey. Claimant had the appropriate New Jersey licenses for asbestos, lead and hazardous materials abatement. On April 22, 1997, Employer hired Claimant as a supervisor of this New Jersey job. Claimant would also be required to perform other work at Employer's request.

On June 21, 1997, Claimant was working with an ax and a hatchet on the roof at another job site. At the time, Claimant was wearing protective clothing, including a helmet, respirator and a full protective suit. Additionally, on the day in question, the temperature had soared into the high 90's. Claimant became severely dehydrated and began experiencing headaches and body aches. Claimant climbed down off the roof and rested somewhat before attempting to drive Employer's company truck back to Employer's home offices in Reading, Pennsylvania.[2] However, before reaching his destination, Claimant was involved in a motor vehicle accident, sustaining injuries to his face, nose, forehead and head. Since the accident, Claimant has had persistent headaches, memory, concentration and speech problems, and has developed a sensitivity to heat, light and strong odors. Claimant has undergone numerous evaluations, neuro-psychological testing, speech therapy, psychotherapy and cognitive re-training.

---

1. The only issue presently before this Court involves Claimant's claim petition and the calculation of his average weekly wage.

2. During this return trip, the air conditioning in the truck was not working and Claimant stopped on more than one occasion to get water.

Nevertheless, a short time after the accident, on August 5, 1997, Employer issued a notice of temporary compensation payable (NTCP), describing Claimant's injury as a concussion.[3] Pursuant to the NTCP, Claimant received temporary total disability benefits in the amount of $115.20 per week, based upon an average weekly wage of $128.00 per week. On August 7, 1997, Claimant filed a claim petition, essentially challenging Employer's calculation of his average weekly wage. More specifically, Claimant alleged a much higher average weekly wage based upon an hourly salary of $23.71.

Employer filed an answer specifically denying Claimant's allegation that he earned $23.71 per hour. Instead, Employer alleged, in accordance with its original NTCP, that Claimant's compensation rate should be based upon an average weekly wage of $128.00. The case proceeded with hearings before the WCJ. Ultimately, by decision and order dated June 16, 1998, Claimant's compensation benefits were adjusted to the maximum rate at the time, $542.00 per week, with no specific finding as to his average weekly wage. Employer appealed to the Board and, by stipulation of the parties, the case was remanded to the WCJ for further findings of fact on this issue.[4]

The case again proceeded with hearings before the WCJ.[5] Regarding the average weekly wage issue, Claimant testified on his own behalf. Claimant indicated that Employer's calculation of his average weekly wage at $128.00 per week was based upon an hourly rate of $8.00 and sixteen hours of work per week. Claimant acknowledged that both he and Employer's president, Anthony Santarelli, had agreed to a base rate of $8.00 per hour, but indicated that this rate only applied to non-environmental work, such as driving to and from a work site. *See* S.R.R. at 73b.[6] Claimant further indicated his belief that he was working "full time" for Employer. (S.R.R. at 10b). Claimant then presented his pay stubs for the two-month period that he worked from April 22, 1997, through June 21, 1997. These pay stubs reflected that Claimant worked a total of sixty-four hours during this period and earned a gross amount of $1,421.07. Hence, Claimant was paid an average rate of $22.20 per hour for this period.

In opposition, Mr. Santarelli testified on his company's behalf. Mr. Santarelli indicated that he personally hired Claimant in April of 1997, at which time he informed him that his base rate of pay would be $8.00 per hour for the first thirty days. However, if sent to a union site, Mr. Santarelli acknowledged that Claimant would

3. The parties subsequently agreed to convert the NTCP into a regular notice of compensation payable (NCP).

4. In the meantime, Employer had filed its modification/suspension/termination petition and Claimant had filed a petition for review of utilization review determination, which had concluded that any evaluations and speech therapy after April 23, 1998, was neither reasonable nor necessary. On remand, Claimant's claim petition was consolidated with the aforementioned petitions for purposes of disposition by the WCJ. However, as neither the modification/suspension/termination petition nor the review petition is pres-

ently at issue before this Court, we will not discuss the same nor will we further discuss the testimony presented in support of and in opposition to the same.

5. These hearings, however, related to Employer's modification/suspension/termination petition and Claimant's review petition. Hence, the testimony discussed hereafter occurred during the initial phases of this case, prior to remand.

6. The abbreviation "S.R.R." refers to the Supplemental Reproduced Record filed in this case on behalf of Claimant.

be paid the prevailing wage, normally in excess of $20.00 per hour.[7] Mr. Santarelli described Claimant's relationship as neither full nor part time, but rather "[a]s needed only." (S.R.R. at 50b). Additionally, Mr. Santarelli indicated that Claimant might be paid other rates depending upon the nature and/or location of a job. Regarding the $1,421.07 that Claimant received in the aforementioned two-month period, Mr. Santarelli indicated that Claimant was paid the on-site prevailing wage at that time.

Ultimately, with respect to this issue, the WCJ granted Claimant's claim petition. The WCJ accepted Claimant's entire testimony as credible and persuasive, including that portion of his testimony that he was employed full time for Employer. The WCJ thereafter found that Claimant's average weekly wage was $888.00 per week. The WCJ arrived at this figure by multiplying Claimant's known hourly wage of $22.20 with Employer times a normal full-time week of forty hours.[8] Employer appealed to the Board and the Board affirmed, insofar as the average weekly wage issue was concerned.[9]

On appeal to this Court,[10] Employer argues that the Board erred in affirming the decision of the WCJ with respect to the WCJ's calculation of Claimant's average weekly wage.[11] More specifically, Employer argues that the WCJ's finding, that Claimant was expected to work a full, forty-hour week, was not supported by substantial evidence in the record.[12] We disagree.

Section 309 of the Pennsylvania Workers' Compensation Act (Act)[13] addresses the calculation of an employee's average weekly wage. Specifically, Section 309(d), 77 P.S. § 582(d), provides that "the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury." However, "if the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages," such as Claimant in the present case, then "the average weekly wage shall be the hourly wage multiplied by the number of hours the employe was

---

7. In fact, when he first contacted Claimant, Mr. Santarelli indicated that he asked him if he was interested in a "prevailing wage job." (S.R.R. at 48b).

8. Hence, Claimant was entitled to the maximum compensation rate of $542.00 per week.

9. The Board did modify the WCJ's decision with respect to a finding relating to Claimant's review petition.

10. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America )*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988).

11. The determination of a claimant's average weekly wage is a question of law and, thus, is fully reviewable by this Court. *See Eljer Industries v. Workmen's Compensation Appeal Board (Johnson)*, 670 A.2d 203 (Pa.Cmwlth. 1996).

12. In its brief to this Court, Employer indicates that it does not disagree with the WCJ's finding that Claimant had an hourly rate of $22.20. Rather, Employer now argues that Claimant's average weekly wage should be $167.17 per week, calculated by multiplying his hourly rate, $22.20, times the average number of hours per week that he worked, 7.53 (total hours worked, sixty-four, divided by total weeks worked, eight and a half).

13. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582.

expected to work per week under the terms of employment." *See* Section 309(d.2) of the Act, 77 P.S. § 582(d.2).[14]

■ As the statute specifically directs the WCJ to look at "the number of hours the employe was expected to work per week under the terms of employment," this necessarily renders such an issue a factual determination subject to the WCJ's credibility assessments. As we all know, the WCJ is the ultimate finder of fact and has exclusive province over questions of credibility and evidentiary weight. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board and Krawczynski,* 9 Pa.Cmwlth. 176, 305 A.2d 757 (1973). This Court will not disturb the credibility determinations of the WCJ. *Id.* In making such determinations, the WCJ is at liberty to accept or reject the testimony of any witness in whole or in part. *Carr v. Workmen's Compensation Appeal Board (May Department Store),* 671 A.2d 780 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 544 Pa. 662, 676 A.2d 1202 (1996).

In this case, the WCJ accepted the testimony of Claimant as credible and persuasive. As noted above, Claimant testified before the WCJ as to his belief that he was employed full time for Employer. (S.R.R. at 10b). This testimony, coupled with Employer's acceptance of the WCJ's finding that Claimant had an hourly rate of $22.20, constitutes substantial evidence in support of the WCJ's decision. Although Employer contends that Claimant's average weekly wage should be calculated by utilizing the hours that Claimant actually worked in the employ of Employer, that is not the calculation set forth in the statute. Instead, Section 309(d.2) states that the WCJ is to look at the number of hours Claimant was "expected to work."

Accordingly, the order of the Board is affirmed.

### *ORDER*

AND NOW, this 21st day of December, 2001, the order of the Workers' Compensation Appeal Board is affirmed.

---

**14.** These Sections were the result of amendments contained in the Act of June 24, 1996, P.L. 350 (commonly referred to as Act 57). Prior to the amendments, Section 309 only had one sub-section (d), no sub-parts, and it provided that the average weekly wage was to be "computed by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury." 77 P.S. § 582(d). When an employee was not employed for thirteen calendar weeks immediately prior to the injury, this Section previously provided that "total wages" shall mean the "amount [the employee] would have earned had he been so employed by employer the full thirteen calendar weeks." *Id.* Furthermore, this Section previously provided that "the average weekly wage shall be the wage most favorable to the employe." *Id.* This latter language was deleted by the Act 57 amendments.