**Charles E. HAVENSTRITE, Petitioner,**

**v.**

**WORKERS' COMPENSATION AP-PEAL BOARD (TOBYHANNA STATE PARK), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2003.

Decided Oct. 15, 2003.

Joseph F. Saporito, Pittston, for Petitioner.

Marion H. Griffin, Philadelphia, for Respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, and LEAVITT, Judge.

COLINS, President Judge.

Charles E. Havenstrite (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a workers' compensation judge (WCJ)(1) denying Claimant's petition to review medical treatment and/or billing and to review compensation benefits, and (2) concluding that chiropractic treatment rendered to Claimant by Joseph Intelisano, D.C., (Provider) after August 1, 2000, was neither reasonable nor necessary. We affirm the order of the Board.

Claimant was injured on June 25, 1999, during the course of his employment with the Commonwealth of Pennsylvania, Department of Conservation and Natural Resources (Employer), when he slipped and fell on his left side while cutting brush with a weed whacker. Employer issued a Notice of Compensation Payable describing Claimant's injury as strain to the left bicep muscle. Provider began to treat Claimant in January, 1999.

On August 29, 2000, Employer filed a petition for utilization review request questioning whether Provider's treatment of Claimant on and after August 1, 2000 was reasonable or necessary. On September 5, 2000, the Bureau of Workers' Compensation appointed Hoover Rehabilitation Services, Inc. as the utilization review organization, and Hoover, in turn named Thomas Kollars, D.O., a chiropractor, as its reviewer. Dr. Kollars issued his report on October 7, 2000, indicating his opinion that Provider's treatment was neither reasonable nor necessary to address Claimant's work-related injury. Hoover issued a utilization review determination face sheet, dated October 20, 2000, based upon Dr. Kollars' report, indicating that Provider's treatment was neither reasonable nor necessary.

On October 30, 2000, Claimant and Provider jointly filed a Petition for Review of Utilization Review Determination.[1] Additionally, Claimant filed a second petition on January 19, 2001, seeking to (1) review medical treatment and/or billing, and (2) review compensation benefits,[2] for the purpose of amending the description of Claimant's work-related injury as indicated on the NCP.

Claimant and Provider raise two issues for our review: (1) Whether the Board erred in affirming the WCJ's conclusion that Claimant failed to meet his burden of proof to establish that the NCP should be amended because it contained a material

1. Colloquy between counsel for the parties and the WCJ on January 18, 2001, the date of the first hearing in this matter, indicates that Provider also filed a petition for review of utilization review on his own behalf. The WCJ indicated that the two petitions would be consolidated. We note that the original record contains only the one petition dated October 20, 2000, which, on its face indicates both Claimant and Provider as petitioners.

2. Claimant filed this second petition following the first hearing apparently because Provider's testimony at the January 18, 2001 hearing indicated that he was treating Claimant for injuries beyond the left bicep muscle injury indicated on the NCP. Claimant sought to show that the NCP injury description was wrong, and that Provider was treating him solely for his actual work-related injuries he alleged were not fully described in the NCP.

mistake; and (2) Whether the testimony of the appointed utilization reviewer, Dr. Kollars, constitutes substantial evidence to support the WCJ's findings in support of his conclusion that Provider's treatment was not reasonable nor necessary.[3]

With regard to Claimant's review petition, wherein he challenged the NCP description of his injury, Employer presented the April 30, 2000 report of Charles J. Hubbard, M.D., an orthopedic surgeon. Dr. Hubbard reviewed an earlier report he issued after he performed an independent medical examination of Claimant on January 19, 2000, and reviewed "documentation that was supplied [to him] at that time." Dr. Hubbard also considered additional "materials" that Employer's attorney provided to Dr. Hubbard. Among these materials and documents were reports from Dr. Conaboy, one of Claimant's earlier treating physicians, and Provider. Based upon his review of this information and Claimant's medical history, Dr. Hubbard opined that Claimant's injury was limited to a strain of his left bicep muscle and tendon. The only medical evidence Claimant presented was Provider's testimony. Provider opined that Claimant had subluxions of bilateral shoulders; subluxions of cervical spine; bilateral radiculopathy; cervical myovitis; and degenerative joint disease, C–4 through C–6.

The WCJ rejected Provider's diagnosis, and found Dr. Hubbard's testimony credible. The WCJ is the arbiter of credibility in workers' compensation matters. *Environmental Options Group v. Workers' Compensation Appeal Board (Brown)*, 787 A.2d 460 (Pa.Cmwlth.2001), *petition for allowance of appeal denied*, 569 Pa. 696, 803 A.2d 736 (2002). Claimant's challenge is essentially an attack on the WCJ's credibility determinations. Because those determinations are unassailable and support the necessary factual findings, we reject Claimant's challenge to the WCJ's denial of Claimant's review petition.

We now address the remaining issue. Claimant asserts that the Board erred in affirming the WCJ's decision because Dr. Kollars, the appointed reviewer, did not initiate discussions with Provider. Claimant asserts that, because Dr. Kollars indicated that one of the reasons he concluded Provider's treatments were not reasonable or necessary was that Provider's documentation was insufficient (for example, he could not understand some of Provider's notes concerning his treatment of Claimant), Dr. Kollars had a duty to inquire as to the meaning of Provider's notes. Specifically, Claimant relies upon 34 Pa.Code § 127.469, which provides:

> Duties of reviewers—consultation with provider under review.
>
> The [Utilization Review Organization (URO)] shall give the provider under review written notice of the opportunity to discuss treatment with the reviewer. The reviewer shall initiate discussion with the provider under review **when such a discussion will assist the reviewer in reaching a determination.** If the provider under review declines to discuss treatment decisions with the reviewer, a determination shall be made in the absence of such a discussion.

(Emphasis added.)

Additionally, 34 Pa.Code § 127.471 provides "[i]f the reviewer is unable to determine whether the treatment under review is reasonable or necessary, the reviewer

---

**3.** Our scope of review is limited to determining whether substantial evidence supports necessary factual findings, whether the Board committed legal error, and whether constitutional rights were violated. 2 Pa.C.S.A. § 704.

shall resolve the issue in favor of the provider under review."

Thus, based upon Dr. Kollar's statement in his report that Provider's "office notes are weak and sketchy" and that his "objective findings are handwritten and difficult to interpret," Claimant contends that the above-quoted regulations placed a duty upon Dr. Kollars to initiate communications with Provider in order to clarify the information in Provider's office notes that he did not understand. Claimant asserts that taking such action would have assisted Dr. Kollars in reaching a determination as to the reasonableness and necessity of Provider's treatment.

Three decisions of this court control our conclusion here. In *Seamon v. Workers' Compensation Appeal Board (Sarno & Son Formals)*, 761 A.2d 1258 (Pa.Cmwlth. 2000), *petition for allowance of appeal granted*, 566 Pa. 654, 781 A.2d 150, *appeal dismissed as improvidently granted*, 572 Pa. 410, 816 A.2d 1096 (2003), this court, relying upon Section 306(f.1) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(6)(iv), noted that a WCJ must consider a utilization review report as evidence, but is not bound by the report in reaching his decision. Rather, the WCJ determines the degree of credibility and weight to which the report is entitled. The Court stated that "[a]ny deficiency or irregularity in the [utilization review] process can be argued before and considered by the WCJ in determining the weight and credibility of the [utilization review] evidence." *Id.* at 1262.

In *Solomon v. Workers' Compensation Appeal Board (City of Philadelphia)*, 821 A.2d 215 (Pa.Cmwlth.2003), the Court summarized our holding in *Bolinsky v. Workers' Compensation Appeal Board (Norristown State Hospital)*, 814 A.2d 833 (Pa.Cmwlth.2003), that a utilization review-er's failure to obtain a claimant's "entire medical file does not automatically preclude a [utilization review] reviewer from assessing the reasonableness or necessity of a particular treatment. This is true even where there was no substantive contact between the reviewer and the treating health care provider." *Solomon*, 821 A.2d at 219, (citing *Bolinsky*, 814 A.2d at 836–37).

The Court in *Solomon* concluded,

The WCJ must make credibility and weight of the evidence determinations regarding any irregularity or deficiency of the contested evidence. Here, as in *Seamon* and *Bolinsky*, the breadth of information reviewed is a factor which the fact-finder may consider, but is no more conclusive than any other single factor considered in evaluating the credibility of conflicting expert opinions. We decline the invitation to declare a [utilization review] reviewer's opinion automatically incompetent for failure to review the entire medical file or speak with the health care provider.

*Id.* at 220.

The facts in *Bolinsky* are likewise instructive. In that case, the employer relied upon a reviewer's report that indicated that physical therapy was not reasonable or necessary for the claimant. The UR determination affirmed that conclusion, and the claimant sought review of that decision before a WCJ. The claimant submitted her medical records and a neurologist's report. The neurologist opined that the physical therapy was reasonable and necessary, and the claimant testified that the therapy helped to decrease her pain and improve her mobility. The WCJ, accepting the testimony of the claimant and her neurologist, concluded that the treatments were reasonable and necessary. As in *Bolinsky*, Claimant here had a full and fair opportunity to present his evidence to

the WCJ, and the WCJ rejected Provider's testimony as to the reasonableness and necessity of his treatment. Unlike *Bolinsky*, the WCJ in this case accepted as credible the testimony of **employer's** witnesses, Dr. Hubbard and Dr. Kollars.

■ We conclude that, in accordance with the above-cited authority, the WCJ performed his role properly by assigning credibility and weight-of-the-evidence where he deemed it belonged——with Employer's witnesses. Although *Seamon* and *Solomon* are factually distinguishable from the present case, in that the reviewers in those cases indicated that the lack of information would not prevent them from forming an opinion as to the reasonableness or necessity of the care at issue, that distinction is immaterial under *Solomon.* Nor is our decision affected by the fact that *Solomon* and *Seamon* involved the lack of information from providers whose treatment was not being questioned. The point to be taken from *Seamon* and *Solomon* is that any defects in the utilization review process, if challenged by a claimant, provider, or employer, can be addressed by a WCJ in a hearing on the merits. An allegedly aggrieved claimant or provider has the opportunity in a hearing before a WCJ to challenge the credibility of a reviewer's report, and can there assert that the WCJ should not assign much weight to the report because it is based on incomplete information or a failure to follow the utilization review procedures.

In this case, the WCJ considered not only the report of Dr. Kollars, but also the report of Dr. Hubbard, who indicated that Claimant's injury was limited to his left bicep muscle and tendon, and that his condition did not require treatment after August 1, 2000. Based upon this substantial evidence, we agree with the Board's conclusion that the WCJ did not err in determining that Provider's treatments were neither reasonable nor necessary for Claimant's work-related injury.

## ORDER

AND NOW, this 15th day of October 2003, the order of the Workers' Compensation Appeal Board is affirmed.

## CONCURRING AND DISSENTING OPINION BY Judge FRIEDMAN.

I concur with that portion of the majority's opinion which affirms the decision of the Workers' Compensation Appeal Board (WCAB) denying Charles E. Havenstrite's (Claimant) petition to review medical treatment and/or billing and to review compensation benefits. I dissent, however, from that portion of the majority's opinion which upholds the WCAB's determination that chiropractic treatment rendered to Claimant by Joseph Intelisano, D.C., (Provider) after August 1, 2000, was neither reasonable nor necessary.

Claimant argues that where Thomas T. Kollars, D.C., (Reviewer) was unable to determine whether the chiropractic treatments were reasonable and necessary because of insufficient documentation, Reviewer was required to initiate a discussion with Provider pursuant to 34 Pa.Code § 127.469. Because Reviewer failed to do so, Claimant maintains that 34 Pa.Code § 127.471(b) requires that the issue be resolved in Provider's favor. I would agree with Claimant.

34 Pa.Code § 127.469 (emphasis added) provides:

Duties of reviewers—consultation with provider under review.

The [Utilization Review Organization (URO)] shall give the provider under review written notice of the opportunity to discuss treatment decisions with the reviewer. *The reviewer shall initiate discussion with the provider under re-*

*view when such a discussion will assist the reviewer in reaching a determination.* If the provider under review declines to discuss treatment decisions with the reviewer, a determination shall be made in the absence of such a discussion.

34 Pa.Code § 127.471(b) provides, "[i]f the reviewer is unable to determine whether the treatment under review is reasonable or necessary, the reviewer shall resolve the issue in favor of the provider under review."

With regard to the treatment rendered by Provider, Reviewer's report stated, "[c]hiropractic office notes are weak and sketchy. There are no regular progress reports by the Doctor of Chiropractic. The SOAP [1] notes by the Doctor are weak and objective findings are handwritten and difficult to interpret." (R.R. at 5a.) Reviewer opined that the chiropractic treatment rendered by Provider from August 1, 2000, through September 19, 2000, was unreasonable and unnecessary. In explaining his opinion, Reviewer stated,

> I have come to my conclusion based on the review of the literature. Patient documentation was minimal, and progress noted is incomplete. It is my professional opinion that *there is insufficient documentation to justify the care rendered between the dates of 8/1/00 and 9/19/00 . . . .* [T]he treatment rendered to [Claimant] . . . was not reasonable or

necessary due to insufficient documentation.

(R.R. at 5a) (emphasis added).

In other words, Reviewer effectively admitted that he needed additional information to be able to make a determination. Indeed, Reviewer indicated that the handwritten objective findings were "difficult to interpret," and he based his decision on the fact that there was "insufficient documentation." (R.R. at 5a.) Clearly, where the *provider under review* has not kept good records or where the handwriting of the *provider under review* is "difficult to interpret," a discussion with the provider under review will assist the reviewer in reaching a determination. Where a discussion will assist the reviewer in reaching a determination, 34 Pa.Code § 127.469 mandates that the reviewer initiate such a discussion. Here, however, Reviewer did not attempt to initiate a discussion with Provider.[2] (R.R. at 5a.) Given that Reviewer did not initiate any discussion with Provider despite insufficient documentation and difficulty in interpreting Provider's handwritten notes, I fail to see how Reviewer was able to determine whether the treatment was reasonable or necessary. In such a case, the regulations required Reviewer to resolve this issue in favor of Provider. 34 Pa.Code § 127.471.

This result also is supported by 34 Pa. Code § 127.472. That regulation requires that a reviewer's report contain "a detailed explanation of the reasons for the conclu-

---

1. The record does not indicate the meaning behind this acronym.

2. Reviewer states there was no telephone conversation because Provider did not request one. (R.R. at 5a.) To the contrary, Provider testified that although he requested to speak with Reviewer, Reviewer never telephoned Provider. (R.R. at 63a, 64a.) I am not troubled by this controversy, however, because even if Provider did not request a conversation, once Reviewer realized that the records

were difficult to interpret, Reviewer had an obligation under 34 Pa.Code § 127.469 to initiate a discussion with Provider in order to reach a proper determination. *See Seamon v. Workers' Compensation Appeal Board (Sarno & Son Formals),* 761 A.2d 1258 (Pa.Cmwlth. 2000) (Friedman, J., dissenting), *petition for allowance of appeal granted,* 566 Pa. 654, 781 A.2d 150 (2001), *appeal dismissed as improvidently granted,* 572 Pa. 410, 816 A.2d 1096 (2003).

sions reached by the reviewer, citing generally accepted treatment protocols and medical literature as appropriate." 34 Pa. Code § 127.472. Clearly, this regulation contemplates that the reviewer's determination of reasonableness and necessity be based on a reason regarding the nature of the treatment; it does not contemplate that the decision be based on illegible handwriting or poor record keeping. Indeed, the majority's result can lead to the denial of needed medical treatment based on nothing other than a reviewer's inability to read and understand a provider's notes.[3]

In reaching its decision, it is noteworthy that the majority never addresses the regulations of the Bureau of Workers' Compensation (Bureau) in its analysis of this issue. Instead, the majority relies solely on three decisions of this court: *Seamon v. Workers' Compensation Appeal Board (Sarno & Son Formals)*, 761 A.2d 1258 (Pa.Cmwlth.2000), *petition for allowance of appeal granted*, 566 Pa. 654, 781 A.2d 150 (2001), *appeal dismissed as improvidently granted*, 572 Pa. 410, 816 A.2d 1096 (2003); *Solomon v. Workers' Compensation Appeal Board (City of Philadelphia)*, 821 A.2d 215 (Pa.Cmwlth.2003); and *Bolinsky v. Workers' Compensation Appeal Board (Norristown State Hospital)*, 814 A.2d 833 (Pa.Cmwlth.2003). I disagree that any of these cases controls here.

Essentially, the majority sees the issue before us as one that turns on the WCJ's credibility determinations and the weight accorded the evidence. Relying on *Seamon* and *Solomon* specifically, the majority states that any defects in the utilization review process, if challenged, can be addressed by the WCJ in a hearing on the merits. Moreover, although *Seamon* and *Solomon* involved the lack of information from providers other than the provider under review, the majority does not believe that this is a relevant distinction. However, with this position, the majority ignores a critical distinction. Unlike Reviewer in this case, the UR reviewers in *Seamon, Solomon* and *Bolinsky* did not indicate that they could not render an opinion due to the lack of medical records or the inability to interpret existing records. Consequently, the UR reviewers in those cases were not precluded from making a determination of reasonableness and necessity. In the present case, however, Reviewer felt he had insufficient documentation and admitted that he had difficulty interpreting Provider's handwriting. I fail to understand how a reviewer can determine if treatment is reasonable or necessary if he cannot even decipher and, consequently, understand, exactly what the treatment at issue entailed. As stated, in such a case, the regulations required Reviewer to resolve this issue in favor of Provider.[4] 34 Pa.Code § 127.471.

**3.** The majority points out that Dr. Hubbard also opined that Provider's treatment was not appropriate. However, this evidence is not substantial evidence to support the WCJ's finding that the treatment was neither reasonable nor necessary because it is not competent as it relates to that issue. Disputes as to the reasonableness and necessity of treatment must be resolved through the UR process. Section 306(f.1)(6) of the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(6)(i). Further, only a URO authorized by the Commonwealth's Department of Labor and Industry may engage in UR, and UR of

all treatment must be performed by a provider licensed in the same profession and having the same or similar specialty as the provider under review. 77 P.S. § 531(6)(i). Here, there is no indication that Dr. Hubbard's report resulted from the UR process or that he was part of any URO; additionally, he is an orthopedic surgeon.

**4.** I point out that, in *Bolinsky*, this court did not consider the Bureau's UR regulations at issue here. Therefore, *Bolinsky* does not control the present case.

Accordingly, I would hold that the WCAB and the WCJ erred in determining that the treatment rendered by Provider was neither reasonable nor necessary.[5]

Judge SMITH–RIBNER and Judge LEAVITT join in this concurring and dissenting opinion.

---

**5.** This does not mean that Employer would be liable for all of Provider's treatment, however. Because Claimant's work-related injury is limited to a left bicep strain, Employer would not be responsible for any of Provider's treatment for injuries beyond the left bicep muscle.